[No. 30198. *En Banc*. December 22, 1947.]

W. L. GAZZAM, *Appellant*, v. BUILDING SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 262 *et al.*, *Respondents*.[1]

*Theodore S. Turner*, for appellant.

*L. Presley Gill*, for respondents.

SIMPSON, J.—Plaintiff instituted this action for the purpose of securing a judgment for damages suffered by him as a result of picketing by defendant union; also for the purpose of securing an injunction prohibiting the union from placing him on the unfair list.

[1]Reported in 188 P. (2d) 97.

The cause was tried to the court, sitting without a jury. After plaintiff had introduced his evidence, the court granted a motion for nonsuit and dismissed the action.

Plaintiff has appealed to this court, and in so doing urges that the trial court erred in sustaining the defendants' challenge to the sufficiency of the evidence and in entering judgment for defendants.

We summarize the essential facts as follows: Appellant is the owner of the Enetai Inn, a hotel situated in the city of Bremerton. The hotel has one hundred rooms and seven cottages, devoted for the most part to the accommodation of transient guests. During the month of May, and for some time prior thereto, appellant employed about fifteen persons, consisting of an engineer, janitor, bell boys, clerks, and a housekeeper. None of the employees belonged to respondent union. There was no dispute between appellant and his employees regarding wages, hours, or conditions of employment.

Just prior to May 1, 1946, respondents William Morganson and Charles Meyer, as representatives of respondent union, asked appellant if he was agreeable to making a contract with the union. As testified to by Mr. Morganson, he and Mr. Meyer insisted that the contract with the union should be such as would require all of the employees to join the union. Appellant stated that his answer would depend upon the action of his employees. Appellant then went to Los Angeles for a short visit and gave the union representatives permission to talk to the employees of the hotel. Upon his return to Bremerton, he met Meyer, who again requested that appellant sign a contract with the union. Appellant answered, "It is entirely up to my employees and you will have to consult with them about that and see what the decision was."

May 2, 1946, appellant received a letter from the Central Labor Council of Bremerton, which read:

"This Council has been requested by Building Service Employees Local No. 262 to place your hotel on the 'We do not patronize' list.

"Before acceding to a request of this kind, it is the policy of the Council to call a meeting of both parties and attempt to arrange a settlement; accordingly such a meeting has been called for Tuesday, May 7th. at 7-30 P.M. in the office of the Council, upstairs in the old city dock.

"Please be present or have a representative attend, as failure to attend will be construed to mean that you do not wish to bargain collectively with Organized Labor."

Appellant did not attend that meeting in person but was represented by his attorney.

Appellant, at the request of respondent union, arranged a conference between the representatives of the union and his employees for May 10th. He was not present at the meeting. However, the representatives of the union talked to the employees, explained to them the benefits to be derived from becoming union members, and asked them to join. The employees indicated that they did not desire to become members of the union. Following the meeting, appellant received a letter from the Central Labor Council, which was as follows:

"By action of the Central Labor Council, in regular meeting, Monday, May 27th. your hotel, the Enetai Inn, was placed on the 'We do not patronize' list."

May 31, 1946, which was after the receipt of the last-mentioned letter, appellant's place of business was peacefully picketed by respondent union. The picketing continued until July 20, 1946. Shortly after the picketing started, a laundry which had cared for appellant's needs, and whose employees belonged to the union, refused to work for appellant. Appellant then attempted without success to do his own laundry. His position at that time is best expressed in the following letter, written by his attorney to Mr. John C. Merkel, attorney for the union:

"Mr. Gazzam has authorized me to say that we are willing to continue negotiations with the representatives of Building Service Employees Local No. 262 for the purpose of reaching some satisfactory solution to the present controversy other than entering into a contract of the type which Mr. Meyers and yourself have thus far proposed. Mr. Gazzam is unwilling to negotiate with the Union concerning

such a contract for the reason that this type of contract, as you, Mr. Meyers, and Mr. Morganson have all explained it, would force all the employees of the Enetai Inn to choose between joining the Union and being discharged, and these employees have already expressed their wish not to join this Union."

According to the evidence of Mr. Morganson, shortly after June 22, 1946, respondent union's agents submitted another proposed agreement to appellant that read:

"It is agreed by both parties hereto that the regular employees now working at the hotel shall not as a condition of continued employment be required to become members of the union. It is further agreed that any new employees who are hired to replace regular employees who have left through normal turnover or discharge shall as a condition of employment become members of the union. New employees shall be required to become members of the union within fifteen days after employment. It is understood that the employer shall have the voluntary right to either call the union for new employees or hire anyone whom he desires the only factor being that a condition of employment of new employees shall be that they come into the union within fifteen days. It is also agreed that the union shall be the bargaining agent for both Union and non-union employees and that any wages hours and working conditions established for Union employees shall be paid also to the non-union employees."

The evidence submitted established without doubt the fact that Mr. Gazzam had suffered damages because of the picketing by respondent union. Appellant takes the position that the sole purpose of the picketing, and listing as unfair, was to compel him to coerce his employees to join the union against their will. Further, that coercion is contrary to the public policy of the state of Washington, as declared in the labor disputes act, chapter 7, p. 10, Laws of 1933, Ex. Ses. (Rem. Rev. Stat. (Sup.), § 7612-2 [P.P.C. § 695-3].) That declaration of the policy reads as follows:

"WHEREAS, Under prevailing economic conditions, developed with the aid of governmental authority for owners of property to organize in the corporate and other forms of ownership association, the individual unorganized worker is commonly helpless to exercise actual liberty of contract

and to protect his freedom of labor, and thereby to obtain acceptable terms and conditions of employment, wherefore, though he should be free to decline to associate with his fellows, it is necessary that he have full freedom of association, self-organization, and designation of representatives of his own choosing, to negotiate the terms and conditions of his employment, and that he shall be free from interference, restraint, or coercion of employers of labor, or their agents, in the designation of such representatives or in self-organization or in other concerted activities for the purpose of collective bargaining or other mutual aid or protections; . . . "

Respondents maintain that picketing by a union which does not include within its membership any employees is legal. They base their contention upon the right of free speech as guaranteed by the constitution of the United States.

Discrepancies creep into our decisions from time to time, and it is frequently necessary that a review be had of our opinions, at which time the cases may be analyzed, approved, or overruled, to the end that the law be made certain, so that individuals and organizations, and members of the bench and bar, may be advised of the holdings of this court. In cases like the one at bar, organized, nonorganized labor, and employers, are entitled to definite decisions regarding their rights and liabilities, to the end that they may conduct their affairs as law-abiding citizens, without danger to themselves or their property. To that end, we shall call attention to our most recent decisions.

The facts in *Safeway Stores v. Retail Clerks' Union, Local No. 148*, 184 Wash. 322, 51 P. (2d) 372, decided in 1935, indicate that, in order to get the employees of the Safeway stores to join the retail clerks' union, the latter marched pickets to and fro in front of the stores. Thereafter, Safeway Stores instituted an action to permanently enjoin the union from such picketing, and also to collect damages for injury to its business as a result of the picketing. A permanent injunction was granted and damages allowed. It was also held that the 1933 labor disputes act was inapplicable to nonemployee picketers, the term "labor dispute"

not having been intended to include the type of picketing used by the union.

In *Blanchard v. Golden Age Brewing Co.*, 188 Wash. 396, 63 P. (2d) 397, decided by this court in 1936, the 1933 act was interpreted, and three sections (7, 8, and 9) were held unconstitutional. The court based its view upon the existence of an inherent right in the court of equity to issue injunctions in labor disputes. It will be noted that, in this case, a "labor dispute" within the meaning of the act was found to exist because employees of the defendant were involved. This court stated that the removal of jurisdiction over such cases, except in the face of certain facts, and after following a certain procedure, was an unwarranted interference with equity's rights as guaranteed by the state constitution.

Following that case, this court decided *Kimbel v. Lbr. & Sawmill Workers Union No. 2575* (1937), 189 Wash. 416, 65 P. (2d) 1066. In this latter case, it appears that the defendant union was attempting to unionize plaintiff's employees, several of whom already belonged to the defendant union. The pickets were employees of the plaintiff and remained at a considerable distance from plaintiff's place of business. No mention was made of the 1933 act. The court's refusal to enjoin was based chiefly on the reasonable nature of defendant's demands, and the fact that the picketing was being done at a reasonable distance.

In *Adams v. Building Service Employees International Union, Local No. 6* (1938), 197 Wash. 242, 84 P. (2d) 1021, this court again had before it a case in which the evidence showed that an outside union was seeking to organize the workers in the plaintiff's place of business, using pickets to lend strength to the battle. The court then cited the *Safeway* case, *supra,* to show that there was no labor dispute, and affirmed the superior court's decree, which had permanently enjoined the union from picketing the employer's place of business.

The *Safeway* case was again the basis of a decision holding that picketing done by an outside union was unlawful,

in *Fornili v. Auto Mechanics' Union Local No. 297, etc.* (1939), 200 Wash. 283, 93 P. (2d) 422.

The next case is that of *United Union Brewing Co. v. Beck* (1939), 200 Wash. 474, 93 P. (2d) 772, which involved the activities of an outside union and included picketing. Again the term "labor dispute" was held to exclude that type of relationship mentioned in the *Safeway* case. The decision was based upon the holdings in the *Safeway* and *Adams* cases.

In *Yakima v. Gorham* (1939), 200 Wash. 564, 94 P. (2d) 180, this court had before it a question concerning the constitutionality of an ordinance making picketing unlawful except by employees who had been employed three months or more at the place of the business picketed, and who had been so employed within sixty days of the period in which the acts were done. The appellant was a picket who had been carrying a "sandwich sign" pronouncing the employer unfair to organized labor, and, although a member of a union whose members had been discharged for their membership, he was not, and had never been, an employee of the picketed employer. The court held that the ordinance was unconstitutional, and overruled several of our former cases by saying that they antedated the passage of the 1933 act and could not be considered as authority.

In *Bloedel Donovan Lbr. Mills v. International Woodworkers of America, Local No. 46* (1940), 4 Wn. (2d) 62, 102 P. (2d) 270, the national labor relations board had certified the majority union, and the minority union had picketed the employer's place of business, and this court decided that the picketing was improper, and that no labor dispute was involved. The court based its holding that the picketing was unlawful on the fact that it appeared that the sole purpose of the strike and picketing was to do away with the closed shop agreement entered into between the employer and the majority union under the authority of N.L.R.B.

Again, in *Shively v. Garage Employees Local Union No. 44* (1940), 6 Wn. (2d) 560, 108 P. (2d) 354, this court held that peaceful picketing of the place of business of an em-

ployer by a union which did not include in its membership any employee of the employer, done for the purpose of persuading or coercing such employees to join the union against their will, was unlawful. This court further held in that case that the right of free speech is not an absolute right.

In *Edwards v. Teamsters Local Union No. 313* (1941), 8 Wn. (2d) 492, 113 P. (2d) 28, an action denying an injunction against picketing was before this court. In that case, the union called out its workmen and began to picket after an employer failed to comply with an agreement made with the union. This court held that a labor dispute existed, and that the picketing was lawful.

*O'Neil v. Building Service Employees International Union, Local No. 6* (1941), 9 Wn. (2d) 507, 115 P. (2d) 662, 137 A. L. R. 1102, is the next case which has to do with picketing. In that case, plaintiff operated two apartment houses with the assistance of her family, and without the help of outside employees. Defendant union peacefully picketed the apartment houses in an effort to compel the plaintiff to join the union. The employer-employee relationship did not exist between the disputants, but this court denied injunctive relief, saying that the right of peaceful picketing was guaranteed by the constitution.

Following the above case, we find that of *S & W Fine Foods v. Retail Delivery Drivers and Salesmen's Union, Local No. 353* (1941), 11 Wn. (2d) 262, 118 P. (2d) 962. That case involved picketing by the defendant union of the S & W Fine Foods warehouse, because their salesmen, who were perfectly satisfied with their situation, had refused to join the union. The *Swing* case (*American Federation of Labor v. Swing*, 312 U. S. 321, 85 L. Ed. 855, 61 S. Ct. 568) was held to be directly in point, and this court denied plaintiff any relief.

In *Weyerhaeuser Tbr. Co. v. Everett Dist. Council of Lbr. & Sawmill Workers* (1941), 11 Wn. (2d) 503, 119 P. (2d) 643, the defendant union was in the minority (12 employees out of a total of 1,277). It sought to induce the employer to enter into a contract with it, although to do

so would be in violation of the Wagner act, since the employer was already under contract with the bargaining agency of the majority. The election had not yet been certified by the national labor relations board, but certification was not necessary before the employer could violate the Wagner act by dealing with minorities. The resulting picketing was not strictly peaceful because of the fact that some threats were made which deterred entrance to the mill owned by the employer. This court held that the picketing by a minority union prior to certification by the N.L.R.B. of the election, was legal.

In *State ex rel. Lbr. & Sawmill Workers v. Superior Court* (1945), 24 Wn. (2d) 314, 164 P. (2d) 662, 166 A. L. R. 165, this court denied an injunction where it was found that an employer, pursuant to an order of the national labor relations board, recognized another union as bargaining agent. In that case, the picketing was for the purpose of urging the employees of the recognized union to pursue a course of action similar to that which the picketing union was following in a campaign waged by both unions for a wage increase throughout the industry which was common to both unions. This court held that the picketing was an exercise of free speech and relied upon the case of *Thornhill v. Alabama*, 310 U. S. 88, 84 L. Ed. 1093, 60 S. Ct. 736.

Our most recent case on the question involving picketing, is that of *Swenson v. Seattle Central Labor Council* (1947), 27 Wn. (2d) 193, 177 P. (2d) 873. In this case, there was no employer-employee relationship between the picketing union and the employer. There was a jurisdictional dispute between rival unions, and, after one union had been certified, but before the agreement was signed, the union with no employees began to picket. This court, as we will point out later, held that there was no labor dispute.

It will be noted that fourteen cases have been decided by this court since the passage of the act of 1933. These cases are not in harmony. In the *Safeway, Adams, Fornili, United Union Brewing Co., Shively, Bloedel Donovan,* and *Swenson* cases, this court held that peaceful picketing of an employer's place of business was unlawful in those cases

in which the employees were not members of the union, and the purpose of the picketing was to force the employees to join the union, or to compel the employer to enter into a contract which would, in effect, compel his employees to become members of the union.

In the *O'Neil* and *S & W Fine Food* cases, the court ignored its former cases to which we have referred and held that any peaceful picketing was lawful.

█ The other cases cited did not directly involve questions presented here. The leading case cited with approval on many occasions, and never overruled, is *Safeway Stores v. Retail Clerks' Union, Local No. 148,* 184 Wash. 322, 51 P. (2d) 372. The reasons given in that case for holding picketing similar to that present in the instant case to be unlawful, are so clearly expressed that we quote and again approve the following excerpt:

"The vital, controlling question at issue here is plain and easy of solution. It in no way pertains to the relations between the appellant, a merchant, and its employees. For aught that appears, they are content and satisfied, among themselves. On the contrary, this is a lawsuit between appellant and a third party—a labor union that does not include in its membership any employee of the appellant. What right have the respondents to insist or demand, at the threat or cost of the destruction of appellant's business, or at all, that appellant ask, urge or coerce, directly or indirectly, its employees, who are at liberty to do as they please, to join respondents' organization? Of course, there is nothing unlawful in hiring clerks or salesmen who are not members of a local organization such as the respondent; and any attempt, like that in this case, to deny or cripple one's right to do so is an unwarranted attempt by individuals or persons to unreasonably interfere with the freedom of the liberty and property right of contract."

Aside from the statute, the *O'Neil* and *S & W Fine Foods* cases are wrong in principle and are expressly overruled.

In *Swenson v. Seattle Central Labor Council, supra,* the facts were: The employer employed nonunion labor. At different times, for several years, he had been requested by union representatives to take certain actions in order to bring the union question to the attention of his em-

ployees. Upon his refusal to obey the request, and, after the union was unable to secure the employees to join their organization, a picket line was placed at the employer's place of business. Passing upon the question, identical with the one presented here, we stated:

"There could not have been a dispute 'between one or more employees or associations of employees and one or more employees or associations of employees,' as provided in the act, because here, no members of the picketing unions were employees of the Sweden manufacturing company. A jurisdictional dispute between rival unions can become a 'labor dispute' provided the union members involved are employees of the same company, and provided further that no exclusive bargaining agency has been set up or provided for. Here, there was no labor dispute."

We then discussed all of the important cases cited and relied on by the litigants in the case at bar, including *Carpenters and Joiners Union of America v. Ritter's Cafe*, 315 U. S. 722, 86 L. Ed. 1143, 62 S. Ct. 807. We considered the constitutional questions presented and made clear the rule that should be applied in picketing cases, as follows:

"The United States supreme court has, by these cases, established this rule: Peaceful picketing is an exercise of the right of free speech. Organized labor has the right to communicate its views either by word of mouth or by the use of placards. This is nothing more nor less than a method of persuasion. But when picketing ceases to be used for the purpose of persuasion—just the minute it steps over the line from persuasion to coercion—it loses the protection of the constitutional guaranty of free speech, and a person or persons injured by its acts may apply to a court of equity for relief."

That case, as heretofore pointed out, decided in line with the *Safeway* case that coercive picketing is not protected by either our state or Federal constitution.

May 19, 1947, the supreme court of Colorado decided the case of *Denver Milk Producers v. International Brotherhood of Teamsters, etc.*, 116 Colo. 389, 183 P. (2d) 529. That case involved facts similar to those presented here—peaceful picketing of an employer. The employer who was picketed did not have any employees who belonged to the union.

The Colorado court quoted with approval all of our *Swenson* opinion which had to do with the law relative to peaceful picketing, such as we have presented in the case at bar. The court then held that an act of the legislature, known as the labor peace act, was constitutional, valid, and enforcible. They further held that there was no merit in the contentions of the defendants that their constitutional rights under the first, thirteenth, and fourteenth amendments to the Federal constitution would be violated if the injunction against picketing was made permanent.

In 1933, the same year the legislature passed our public policy act, the general assembly of Indiana passed an act commonly known as the anti-injunction act, chapter 12, Acts 1933, §§ 40-501 to 40-514, Burns' 1933, §§ 10155 to 10168, Baldwin's 1934. That act used the identical words of our public policy act.

In 1939, the supreme court of Indiana decided the case of *Roth v. Local Union No. 1460 of Retail Clerks Union,* 216 Ind. 363, 24 N. E. (2d) 280. The facts in that case were that the plaintiff owned a small grocery store and employed three persons. The defendant union coerced the employees into joining its organization by threatening them that, if they did not do so, the store would be picketed, and that they would lose their jobs. Thereafter, the employees refused to strike and resigned from the union, whereupon the plaintiff's store was peacefully picketed. The plaintiff was at peace with his employees at the time of the picketing, and none of them belonged to, or wanted to join or belong to, the union. The trial court found that plaintiff had performed all obligations imposed upon him by law. In passing upon the question presented, the supreme court of Indiana said:

"To ascertain the intent of the legislative body that enacted a statute is the fundamental rule for its judicial construction. When the purpose of an act is expressed in clear and unambiguous terms, this must be accepted as the solemn declaration of the sovereign. The public policy of the state is a matter for the determination of the Legislature and not for the courts. The statute here under consideration declares that it is the public policy of this state that

the individual unorganized worker shall be free to decline to associate with his fellows and that he shall be free from interference, restraint, or coercion on the part of his employer. This must mean that no labor union may demand that an employer require his employee to join such union, because no employer has the right to require an employee to join or refrain from joining a labor union. Any person or group which undertakes to coerce an employer to do that which is contrary to the express public policy of this state thereby undertakes to compel the performance of an unlawful act. The lawful weapon of peaceful picketing may not be utilized to accomplish such an unlawful purpose. It is quite immaterial that the things done to bring about the unlawful purpose were not *per se* unlawful. This is our interpretation of our statute. . . .

"The facts are not here in dispute. The court found from the evidence (which is not before us) that the plaintiff had performed all obligations imposed upon him by law; that he was at peace with his employees; that none of them belonged or wanted to belong to the picketing union; and that the object of the picketing complained of was to compel the plaintiff, against his desire, to sign a closed shop contract, whereby his employees would be compelled to join the union against their will or be discharged, which, as we have already pointed out, the plaintiff was prohibited from doing by positive law. Under these circumstances, the picketing was wrongful and oppressive and it ought to have been enjoined."

Our act and that of Indiana are identical; the facts in each case are alike. The reasoning and conclusions of the supreme court of Indiana are unanswerable. We adopt them as quoted above.

We hold that the acts of respondents, in so far as the picketing was concerned, were coercive—first, because they violated the provisions of Rem. Rev. Stat. (Sup.), § 7612-2, and, second, because they were in violation of the rules of common law as announced in the cases just approved.

Appellant was entitled to recover any damages he may have suffered as a result of the picketing. A study of the evidence reveals that it was not sufficient to prove that any

damages were suffered by appellant as a result of having been placed on the union's unfair list.

The judgment in this case is reversed, with instructions to proceed with the trial in accordance with the views expressed in this opinion.

STEINERT, JEFFERS, and HILL, JJ., concur.

SCHWELLENBACH, J. (concurring in the result)—I concur in the result. However, I do not believe that a union can be enjoined from merely placing an employer on the unfair list.

MILLARD, J. (dissenting)—*O'Neil v. Building Service Employees International Union,* 9 Wn. (2d) 507, 115 P. (2d) 662, 137 A. L. R. 1102, is controlling. It is in harmony with *American Federation of Labor v. Swing,* 312 U. S. 321, 85 L. Ed. 855, 61 S. Ct. 568; *Cafeteria Employees Union, Local 302, v. Angelos,* 320 U. S. 293, 88 L. Ed. 58, 64 S. Ct. 126 (this is subsequent to *Carpenters and Joiners Union of America v. Ritter's Cafe,* 315 U. S. 722, 86 L. Ed. 1143, 62 S. Ct. 807), and other opinions of the United States supreme court which are binding on this court. See, also, *Yakima v. Gorham,* 200 Wash. 564, 94 P. (2d) 180; *S & W Fine Foods v. Retail Drivers, etc. Union, Local 353,* 11 Wn. (2d) 262, 118 P. (2d) 962; *State ex rel. Lbr. & Sawmill Workers v. Superior Court,* 24 Wn. (2d) 314, 164 P. (2d) 662, and *Park & Tilford Import Corp. v. International Brotherhood of Teamsters, etc.,* 27 Cal. (2d) 599, 165 P. (2d) 891, 162 A. L. R. 1426.

The opinions of the United States supreme court which we have heretofore followed, hold that the constitutional guaranty of freedom of speech may not be abridged by judicial policy of a state to forbid resort to peaceful persuasion through picketing. We are concluded by the opinions of the United States supreme court, the latest of which is *Cafeteria Employees Union v. Angelos, supra.* That case was decided subsequent to *Carpenters and Joiners Union of*

*America v. Ritter, supra,* on which the majority opinion is based.

The judgment should be affirmed.

BEALS, J. (dissenting)—In my opinion, the supreme court of the United States has declared the law governing the questions presented on this appeal; and the law, as so declared by the supreme court of the United States, requires that the judgment appealed from be affirmed. I, accordingly, dissent from the conclusion reached by the majority.

MALLERY, C. J., and ROBINSON, J., concur with BEALS, J.

March 26, 1948. Petition for rehearing denied.