[No. 30737. *En Banc.* June 3, 1949.]

GEORGE E. CLINE, *Respondent*, v. AUTOMOBILE DRIVERS AND DEMONSTRATORS LOCAL UNION NO. 882 *et al., Appellants.*[1]

*Bassett & Geisness*, for appellants.

*C. M. McCune* (of *McCune & Yothers*), for respondent.

JEFFERS, C. J.—This action was instituted by George E. Cline against Automobile Drivers and Demonstrators Local

[1]Reported in 207 P. (2d) 216.

Union No. 882, Ralph Reinertsen, its business agent, and J. J. Rohan, its secretary, to enjoin the defendants from in any way interfering with, molesting or damaging the business of plaintiff by picketing or otherwise, and to recover damages alleged to have been sustained as the result of the picketing of plaintiff's place of business by defendants.

Upon the filing of the complaint and the affidavit of plaintiff, the superior court of the state of Washington for King county, on May 13, 1948, issued a show cause order directed to the above named defendants, requiring them to appear on May 19, 1948, and show cause, if any they had, why a temporary restraining order should not issue pending the trial of the cause, restraining and preventing defendants from picketing plaintiff's place of business.

The cause came on to be heard on May 19, 1948, on the show cause order above referred to and upon the oral motion of defendants to dismiss the order to show cause; and the court, having considered the files and records herein, the testimony introduced by the parties, and the argument of counsel, and having on May 25, 1948, made and entered a written memorandum opinion, on the same day made and entered findings of fact, conclusions of law, and a temporary injunction. By the temporary injunction, defendants' motion to dismiss plaintiff's application for a temporary restraining order was denied, and defendants were restrained *pendente lite* from in any manner picketing plaintiff's place of business.

Defendants thereafter filed an answer to the complaint, wherein they admitted and denied certain allegations therein contained and made certain affirmative allegations, the concluding paragraph being:

"That in conducting the aforesaid picketing the defendants were merely exercising their right of freedom of speech guaranteed by the First and Fourteenth Amendments to the Constitution of the United States."

The matter came on for trial on the merits on June 25, 1948, at which time counsel for the respective parties stipulated in open court that the case would be submitted for final judgment on the merits on the evidence theretofore in-

troduced on plaintiff's application for a temporary restraining order, and it appearing from the decree entered that plaintiff further stipulated to waive his claim for damages, the court, having reconsidered the evidence introduced, and having reconsidered and reaffirmed the written memorandum opinion filed on May 25, 1948, and the findings of fact and conclusions of law made and entered on the same date, on June 29, 1948, made and entered its decree permanently restraining and enjoining defendants and each of them from in any manner picketing plaintiff's place of busiess. Defendants gave timely notice of appeal to this court from the judgment last above referred to.

Appellants' assignments of error are that the trial court erred (1) in holding that the evidence does not establish a labor dispute, under the laws of this state; (2) in refusing to hold that appellants' right to picket respondent's place of business is authorized and protected by the first and fourteenth amendments to the constitution of the United States; (3) in permanently enjoining the peaceful picketing of respondent's place of business.

Before discussing our views of the facts and the law applicable thereto in this case, we desire to quote in full the written memorandum decision filed by Honorable Chester A. Batchelor, on May 25, 1948, as such memorandum decision expresses so fully and completely the trial court's theory of this case and its reasons for the conclusions reached and the judgment entered.

"Being of the opinion that my oral decision on May 21st was perhaps prolix and covered discussion or argument concerning questions and matters which have become moot by reason of the decision of the supreme court in the case of *Gazzam v. Building Service Employees,* 129 Wash. Dec. 455 [29 Wn. (2d) 488], I have decided, upon my own motion, to withdraw said oral decision and substitute therefor this written memorandum decision. It will be signed and entered prior to the signing and entry of findings of fact and order, and will supersede and take the place of said oral decision.

"The fundamental facts in this case, in my opinion, are, in utimate effect, substantially indentical with those in the case of Hanke v. International Brotherhood of Teamsters

etc. Union, No. 392989 of this court. While it is contended in an able argument by counsel for the defendant that a distinction exists between the Hanke case and the case at bar, by reason of the former or past relationship between the parties to this action, I believe that the correct applicable tests herein is the relationship between the parties at this time.

"The supreme court in the *Gazzam* case, *supra,* held that such picketing as involved herein should be enjoined, the court on page 467 [29 Wn. (2d) p. 500] saying:

" 'We hold that the acts of respondents, in so far as the picketing was concerned, were coercive—first, because they violated the provisions of Rem. Rev. Stat. (Sup.), 7612-2, *and, second, because they were in violation of the rules of common law as announced in the cases just approved.'* (Italics mine.)

"My decision relative to picketing in the case of *Swenson v. Seattle Central Labor Council,* 27 Wn. (2d) 193, was reversed by the supreme court, and the supreme court in the subsequent *Gazzam* case expressly approved its previous decision in the *Swenson* case.

"I concur in the able opinion of Judge McDonald in the *Hanke* case, *supra,* that the decisions of the supreme court in the *Swenson* and *Gazzam* cases are controlling in both the *Hanke* case and the case at bar. (See also *Walker v. Gilman,* 25 Wn. (2d) 557.)

"While I find that the picketing here in question was free from violence, threats of violence or interference with any employees of the plaintiff, such picketing, under the *Swenson* and *Gazzam* cases, *supra,* is coercive and subject to injunction.

"Findings, conclusions and order granting to the plaintiff a temporary injunction against picketing *pendente lite,* upon the filing by the plaintiff of an approved bond in the sum of $1500.00, may be prepared, served and presented for signature and entry."

Respondent, George Cline, had been engaged in the business of selling used automobiles at 3126 Eastlake avenue, Seattle, for about four and one-half years prior to May 19, 1948, the date of the hearing at which the testimony hereinafter referred to was introduced. He had never employed a salesman, but had done all the selling himself.

Automobile Drivers and Demonstrators Local Union No. 882 is a voluntary association, organized as a labor union

and chartered by the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, and it embraced among its membership persons employed and engaged in the business of selling used automobiles in the Seattle area. Defendants Ralph Reinertsen and J. J. Rohan, at all times herein mentioned, were, respectively, its business agent and secretary.

Sometime in 1945, respondent, as testified to by him, joined appellant union, under the following circumstances:

"Well, in 1945, after being threatened several times with a picket line and being promised that I would be driven out of business and if necessary out of town, I joined the union on a day when Mr. Rohan came to my place of business and says, 'We have a picket line down the street at Coast-In Service, it's been there a few weeks and has driven them out of business to the point where they are glad to sell out and leave.' He says, 'If you don't sign up with us now we'll have this picket line in front of your place of business next.' At that time I consulted some of the dealers I was acquainted with in the district and they informed me that if I wanted to do business in Seattle I had better sign up with the union. Q. And you joined the defendant union at that time? A. Yes. Q. Are you at the present time a member of the defendant union? A. No, I'm not."

Mr. Reinertsen testified that respondent had been dropped from the union sometime in October, 1947, and was not a member of appellant's organization at the time of this hearing.

It may be stated here that Mr. Rohan, with whom respondent claimed to have had the conversation above quoted, and who was the secretary of appellant union, was not called as a witness in this case.

In the spring of 1946, respondent became a member of Independent Automobile Dealers Association of Seattle (hereinafter referred to as the association), paying his initiation fee therein and one year's dues, from April, 1946, to April, 1947. He paid no further dues to the association, and was not a member thereof on April 14, 1948, on which date a contract was entered into between the association and appellant union.

On or about June 12, 1946, appellant union entered into a collective bargaining agreement with the association, the first clause of which reads as follows:

"That all show rooms and used car lots will close not later than 6:00 p. m. on all week days and shall be closed on Saturdays and Sundays and the following holidays: New Year's Day, Washington's Birthday, Memorial Day, Fourth of July, Labor Day, Armistice Day, Thanksgiving Day and Christmas Day or days observed as such holidays. Each dealer agrees to place in a prominent place on his used car lot or building, a conspicuous sign reading 'Closed Saturdays, Sundays and Holidays.' These provisions relating to closing shall not apply during the general automobile show or used car show sponsored by the Association. Saturday and Sunday work will be permissible on such Saturdays and Sundays as are mutually agreed upon between the Association and the Union."

This agreement remained in effect until April 14, 1948, at which time a new contract was entered into between the union and the association, copy of which was introduced in evidence as defendant's exhibit No. 4. This was the contract in effect at the time of trial.

On the Friday preceding Labor Day of 1947, respondent called appellant union and requested a withdrawal card, informing Mr. Rohan that he was quitting the union and was going to hang up a sign with the two words on it "Open Saturdays," and he did hang up such a sign. At that time appellant union objected to his quitting the union and opening Saturdays, on the ground that he was a member of the association and therefore bound by the contract of June, 1946. Appellant further contended that respondent was still a member of appellant union. Thereafter respondent opened his place of business on Saturdays, and continued to do so at all times, and his place of business was picketed from the Saturday preceding Labor Day in 1947, up until the date of the hearing herein, which occurred, as we have said, on May 19, 1948.

Respondent at no time has had in his employ any member of appellant union. While at the time the picketing commenced respondent did have two employees, they were not

members of appellant union, their duties did not include the sale of automobiles, and there was no dispute of any kind between respondent and such employees. Upon the establishment of the picket line, these employees ceased to work for respondent, and respondent has had no employees in connection with his business from the date on which the picketing commenced to the date of the hearing.

Respondent's testimony as to the actions of the pickets is in part as follows:

"A. They parade up and down the sidewalk part of the time, and part of the time they set on the front of my cars. The part of the time that they parade up and down the sidewalk, they manage to block driveways. I finally closed my main driveway so someone would not get run over there because they were forever stepping in front of an incoming or outgoing car. In addition to that, they've been taking down license numbers of people who stop there, and the method of procedure they use is fighting [frightening] a great many people away. They will get out there, one picket at each end of the automobile and holding up a big placard with a piece of paper on it and hold up a pencil and take down the number. When the owner of the car would ask what this is for they would reply, 'Well, you'll see,' and some customers have said, 'Well, do you think you can cause me trouble,' to which the pickets reply, 'You'll see,' and at this stage of the game most of the customers flee the scene. Q. What effect has this had upon your business? A. Well, the effect on the sale of automobiles has been that it has dropped off to practically nothing, and previous to the picket line I hired a mechanic to keep the automobiles in operating condition. Since the picket line the mechanic fears to work on the premises, so I have no method of keeping my automobiles in operating condition. . . . Q. What has been your experience in so far as securing the delivery of merchandise to the premises? Have you had any difficulty in that respect? A. No truck driver will deliver merchandise to the premises. . . . Q. After these truck drivers have made a delivery and you have received it in front of your premises, have they made any deliveries after that? A. No, they ceased making deliveries after that."

Appellant union, in accordance with the new contract entered into with the association in April, 1948, demanded of respondent, as a condition to the removal of the pickets,

that respondent refrain from opening his place of business after one o'clock on Saturdays, and that respondent employ a member of appellant union, such employee to be compensated by being paid seven per cent of all sales made at respondent's place of business, irrespective of whether such sale was made by the employee or by respondent.

Picketing was normally carried on by two pickets, although at times there were as many as four in front of respondent's place of business. The pickets carried the familiar "sandwich signs," stating that respondent's place of business was unfair to appellant union. The picketing was peaceful, in that the pickets neither used force, nor threatened physical violence, nor actually molested any person seeking to enter or leave respondent's place of business.

The substance of the foregoing statement is contained in the court's findings of fact, and there is no question in our minds but that the court's findings are borne out by the great preponderance of the evidence. The trial court concluded as follows:

"That no labor dispute exists within the meaning of the laws of the state of Washington, and said picketing is, therefore, unlawful, and the plaintiff is entitled to an injunction, *pendente lite*, restraining and enjoining the same . . .

"That said picketing was coercive, and, therefore, an injunction forbidding the same would not infringe the defendants' right of freedom of speech guaranteed by the first and fourteenth amendments to the constitution of the United States."

As we have hereinbefore stated, on stipulation of counsel that no additional testimony would be offered, the court, at the time it entered the decree from which this appeal is taken, reaffirmed its findings and conclusions entered on May 25, 1948.

Appellants contend that a "labor dispute" was shown to exist in this case between respondent and appellant union, under the definition of that term as found in Rem. Rev. Stat. (Sup.), § 7612-13 [P.P.C. § 695-25]; that in picketing respondent's place of business appellant union was merely exercising its right of freedom of speech guaranteed by the

first and fourteenth amendments to the constitution of the United States.

Appellants further contend that the facts in this case do not bring it within the principles announced in *Gazzam v. Building Service Employees International Union,* 29 Wn. (2d) 488, 188 P. (2d) 97.

■ We are of the opinion this case is controlled by the principles announced in the *Gazzam* case, *supra.* We are of the opinion that the testimony is undisputed that at the time this action was commenced, at which time respondent's place of business was being picketed by appellant union, respondent was not a member of appellant union, and had not been since the time appellant union had started to picket his place of business, namely, the Saturday before Labor Day of 1947; that respondent was not a member of the association, and had not been since April, 1947, and was not a party to the contract entered into between appellant union and the association in April of 1948; that respondent did not have in his employ at the time this action was commenced, nor had he ever had in his employ, a member of appellant union.

We are firmly of the opinion that the picketing in this case was coercive, and, being coercive, is not protected by the statutes nor by the state or Federal constitutions.

We see no good purpose in again reviewing and analyzing the cases set out and discussed in the *Gazzam* case. We appreciate fully what has been said by the supreme court of the United States, and we have in this opinion considered the additional authority by that court cited by appellant, but we are still of the same view as expressed in the *Gazzam* case.

We may say further that we are entirely in accord with the majority opinion in the case of *Hanke v. International Brotherhood of Teamsters etc., Local No. 309, ante* p. 646, and reference is here made to that case for a further discussion of our own cases, including the *Gazzam* case, and cases from the supreme court of the United States.

For the reasons herein assigned, the judgment of the trial court should be, and it is, hereby affirmed.

STEINERT, SIMPSON, HILL, and GRADY, JJ., concur.

SCHWELLENBACH, J., concurs in the result.

MALLERY, BEALS, and ROBINSON, JJ., dissent.