[No. 33480.   *En Banc.*   June 21, 1956.]

AUDUBON HOMES, INC., *Appellant*, v. SPOKANE BUILDING AND CONSTRUCTION TRADES COUNCIL *et al., Respondents.*[1]

[1]Reported in 298 P. (2d) 1112.

*Hamblen, Gilbert & Brooke*, for appellant.

*R. Max Etter* and *Ellsworth I. Connelly*, for respondents.

WEAVER, J.— Plaintiff appeals from a decree which denies its application for a permanent injunction enjoining defendants from picketing its place of business and dismisses its action.

No testimony was taken at the trial. The court received a written stipulation setting forth facts agreed upon by the parties.

April 4, 1955, plaintiff, a Washington corporation, was engaged in the construction of eleven dwelling houses in Spokane. On that date, it had in its employ ten carpenters and helpers and one laborer, none of whom were members of defendants' labor organizations or associations. The plaintiff provided year-round employment for its employees. However, it paid less than the existing union scale of wages; had no agreement with its employees regarding health and welfare plans, show-up time, stand-by time, or travel time; and had no agreement with its employees for sickness, death, or burial benefits. Plaintiff's nonunion employees expressed satisfaction with the conditions of their employment. There is no dispute between them and plaintiff as to wages, hours, or conditions of employment.

The defendant, Spokane Building and Construction Trades Council, is an association of various trade unions, including Local 98 of the United Brotherhood of Carpenters and Joiners of America. The business agent of the council and the secretary of the carpenters' union are also parties defendant.

The parties agree that

" . . . defendants . . . were advised . . . that they could not require or demand that any employer, of any of their members, compel or coerce any non-union employee of said employer to become a member of any of said defendant labor organizations against the will of said non-union employee; and said defendants agreed that no request or demand could be made of any employer of non-union employees to compel said employer to coerce or

compel any non-union employee to become a member of any of defendants' labor organizations; . . . "

The *modus operandi* of defendants' campaign, to organize nonunion employees and bring them to membership in the respective unions, is described in the agreed statement of facts:

"1. Contact employer and inform him that your organization is going to attempt to organize his employees into the organization you represent and if successful will be back to discuss an agreement to cover them.

"2. Contact non-union employees and make an attempt to organize them into the proper union having jurisdiction over the work being done.

"3. If workers do not join union, picket the employees with this type of banner, 'Non-union employees working on this Job.' A. F. of L. Building Trades Council.

"4. Keep notes of all contacts."

It appears that defendants did not demand that plaintiff compel or coerce any of its nonunion employees to join any of defendants' labor organizations; nor was any contract presented to plaintiff which would compel any nonunion employees to become members of any of defendants' unions. On the other hand, it does not appear in the record that paragraph No. 1 of the organizational plan was carried out. There is nothing to show that defendants' representatives discussed the matter with representatives of plaintiff.

On numerous occasions, commencing January 31, 1955, plaintiff's nonunion employees were approached by authorized representatives of defendants. They explained the advantages of union membership and the disadvantages of their present status. They solicited their union membership. None of plaintiff's nonunion employees joined any of defendants' labor organizations.

A few days prior to April 5, 1955, defendants' representatives commenced to march in front of the location where plaintiff was constructing its houses. They carried signs reading:

"NON-UNION EMPLOYEES WORKING ON THIS JOB

AMERICAN FEDERATION OF LABOR AND BUILDING TRADES COUNCIL."

The picketing was peaceful at all times and in all respects.

As a result of the picketing, certain suppliers of materials refused to make deliveries to plaintiff at its construction sites. Plaintiff's nonunion employees disregarded the picketing and continued to work at their employment.

The parties further agree that there are other suppliers who will refuse to deliver materials in the event picketing is continued; and that plaintiff will suffer injury and damages to its business and loss of profits.

Based upon these facts, the trial court entered an additional finding that the picketing by defendants was not maintained or directed against plaintiff, but was maintained and directed against the *employees* of plaintiff.

The trial court concluded, as a matter of law, that a labor dispute existed between plaintiff's nonunion employees and the defendants; and that picketing

" . . . was not coercive in accord with the statutes and law applicable, and the same was lawful."

Plaintiff's action for an injunction against the picketing was dismissed.

RCW 49.32.010 provides:

" . . . A case shall be held to involve or to grow out of a labor dispute when the case involves persons who are engaged in the same industry, trade or occupation; or have direct or indirect interests therein; or who are employees of the same employer, or who are members of the same or an affiliated organization of employers or employees; whether such dispute is:

" . . .

"Between one or more employees or associations of employees and one or more employees or associations of employees; . . ."

Based upon this statute, the trial court concluded that a labor dispute existed under the facts, and hence, no injunction should issue.

Defendants argue: that there are two types of peaceful picketing—the first, against the *employer*, the second,

against the *employees*; that they are engaged only in picketing the *employees*; that a labor dispute exists because defendants have not been able to persuade the employees to join the union; that our statutes prohibit an injunction under the circumstances; and, that picketing the employees only is a constitutional exercise of the right of free speech. They term their actions "organizational picketing."

From *Safeway Stores, Inc. v. Retail Clerks' Union, Local No. 148,* 184 Wash. 322, 51 P. (2d) 372 (1935), to *Union Electric & Plumbing Supply v. United Ass'n of Journeymen & Apprentices of the Plumbing & Pipe Fitting Industry of the United States and Canada, Local Union 32,* 45 Wn. (2d) 17, 272 P. (2d) 144 (1954), this court has held that a labor dispute does not exist when no member of the picketing union is employed by the person whose *premises are picketed.* In the latter case, we said:

"The controlling fact established by the findings is that, when plaintiff's business or operations were picketed, it had no employees who were members of the picketing union. Consequently, there was no labor dispute within the purview of the 1933 labor disputes act, RCW 49.32.010, 49.32-.040 [*cf.* Rem. Rev. Stat. (Sup.) §§ 7612-13, 7612-1]. *Gazzam v. Building Service Employees International Union, Local 262,* 29 Wn. (2d) 488, 497, 188 P. (2d) 97 (1947), affirmed by the United States supreme court in *Building Service Employees International Union, Local 262 v. Gazzam,* 339 U. S. 532, 94 L. Ed. 1045, 70 S. Ct. 784. Also, *Morris v. Local Union No. 494 of Amalgamated Meat Cutters & Butcher Workmen of Spokane,* 39 Wn. (2d) 33, 36, 234 P. (2d) 543 (1951), citing cases subsequent to the *Gazzam* cases."

Of the particular section of the statute (quoted *supra*) relied upon by the trial court, we said, in *Swenson v. Seattle Central Labor Council,* 27 Wn. (2d) 193, 201, 177 P. (2d) 873 (1947):

"There could not have been a dispute 'between one or more employees or associations of employees and one or more employees or associations of employees,' as provided in the act, because here, no members of the picketing unions were employees of the Sweden manufacturing company. A jurisdictional dispute between rival unions can become

a 'labor dispute' provided the union members involved are employees of the same company, and provided further that no exclusive bargaining agency has been set up or provided for. Here, there was no labor dispute."

We are not inclined to further refine a rule that this court adopted in 1935, unless it can be said that the shift of emphasis, from picketing the employer to picketing the employees, makes this refinement necessary. However, under the facts of this case, it does not compel a modification of the rule; such a shift of emphasis is but a play on words. To hold otherwise would be to close our eyes to reality.

It is plaintiff's *premises* which are picketed. The picket line stops the delivery of material to the premises; it does not affect the nonunion employees, except that plaintiff might eventually be forced to stop construction; thus, plaintiff would have no further employment for them.

"Picketing for organizational purposes is only fictionally different from picketing for immediate recognition. The same kind of pressure on both employer and employees exists in either case; furthermore, the union is trying to force the employer to coerce his employees in either case; and finally, the union's basic desire—the desire for exclusive bargaining status—is the same in either case. *The only difference relates not to the conduct of the union, or its effects, but to the union's explanation of its conduct.* To make legal decisions vary on such a basis seems peculiar, if not unique." (Italics ours.)   2 Labor Law Journal 803, 805 (November, 1951).

Hence, under these facts, the trial court erred when it concluded that a labor dispute existed under the statute.
It does not follow that an injunction will issue automatically, simply because there is no labor dispute. When no such dispute is found to exist, we give paramount consideration to the anticoercion declarations of RCW 49.32.020.
When there is no labor dispute and the picketing is coercive rather than persuasive, such picketing violates the declared public policy of the state (RCW 49.32.020), and an injunction will issue. *Union Electric & Plumbing Supply v. United Ass'n of Journeymen & Apprentices of the Plumb-*

*ing & Pipe Fitting Industry of the United States and Canada, Local Union 32, supra,* and cases cited therein, are illustrative.

There being no labor dispute, is the picketing coercive in the instant case?

■ It is not clear from the record whether the ultimate purpose of the picketing was to coerce plaintiff into having its employees join a union, or, since defendants had not even approached plaintiff, to cut off plaintiff's building materials and thus force plaintiff's business to die on the vine. In either event, the picketing was coercive and unlawful. *Fornili v. Auto Mechanics' Union Local No. 297 of the International Ass'n of Machinists,* 200 Wash. 283, 93 P. (2d) 422 (1939). The message carried by the pickets could not possibly have been intended for the enlightenment of plaintiff's employees. They had already been contacted by agents of the defendants for the purpose of inducing them to join one or more of defendants' labor organizations.

■ Finally, we are convinced that issuance of the injunction would not violate defendants' constitutional right of free speech. The rule announced in *Swenson v. Seattle Central Labor Council,* 27 Wn. (2d) 193, 206, 177 P. (2d) 873 (1947), is applicable:

"The United States supreme court has, by these cases, established this rule: Peaceful picketing is an exercise of the right of free speech. Organized labor has the right to communicate its views either by word of mouth or by the use of placards. This is nothing more nor less than a method of persuasion. But when picketing ceases to be used for the purpose of persuasion—just the minute it steps over the line from persuasion to coercion—it loses the protection of the constitutional guaranty of free speech, and a person or persons injured by its acts may apply to a court of equity for relief."

Although peaceful picketing is recognized as an exercise of the right of free speech and therefore lawful, it cannot be made the cover for concerted action against an employer in order to achieve an unlawful or prohibited objective or an objective which is contrary to the declared public

policy of the state. *Vogt, Inc. v. International Brotherhood of Teamsters, Local 695, A. F. L.* (Wis.), 74 N. W. (2d) 749 (1956).

The judgment of dismissal is reversed, with instructions to issue the injunction in accordance with the prayer of plaintiff's complaint.

HAMLEY, C. J., MALLERY, SCHWELLENBACH, HILL, DON-WORTH, and OTT, JJ., concur.

FINLEY, J. (concurring in the result)—For the reasons stated in my concurring opinion in *Union Electric & Plumbing Supply v. United Ass'n of Journeymen & Apprentices of the Plumbing & Pipe Fitting Industry of the United States and Canada, Local Union 32*, 45 Wn. (2d) 17, 272 P. (2d) 144, I concur in the result reached by the majority in the instant case.

ROSELLINI, J. (dissenting)—There is nothing in the statute, RCW 49.32.020, governing injunctions in labor disputes that prohibits organizational picketing. Efforts to induce employees to affiliate with a union, through peaceful organizational picketing, are recognized as legitimate union activities in RCW 49.32.010, which provides in part:

"A case shall be held to involve or to grow out of a labor dispute when the case involves persons who are engaged in the same industry, trade or occupation; or have direct or indirect interests therein; . . . whether such dispute is:

"Between one or more employees or associations of employees and one or more employees or associations of employees."

It seems clear that the members of the picketing unions in the instant case "are engaged in the same trade or occupation" as the nonunion employees whom respondents seek to induce to affiliate with their union.

In the Washington cases cited by the majority to sustain its view, this court recognized that, where there is a labor dispute and the picketing is peaceful and noncoercive, the statute forbids the issuing of an injunction.

In *Building Service Employees International Union v. Gazzam*, 339 U. S. 532, 94 L. Ed. 1045, 70 S. Ct. 784 (reviewing *Gazzam v. Building Service Employees International Union*, 29 Wn. (2d) 488, 188 P. (2d) 97, 11 A. L. R. (2d) 1330), the United States supreme court stated:

"The Washington statute has not been construed by the Washington courts in this case to prohibit picketing of workers by other workers. The construction of the statute which we are reviewing only prohibits coercion of workers by employers. *We cannot agree with petitioners' reading of this injunction that 'whatever types of picketing were to be carried out by the union would be in violation of the decree.' Respondent does not contend that picketing per se has been enjoined but only that picketing which has as its purpose violation of the policy of the State. There is no contention that picketing directed at employees for organization purposes would be violative of that policy. The decree does not have that effect.*" (Italics mine.)

The trial court found that the picketing of the respondents was not maintained nor directed against the appellant but was maintained and directed against the employees of the said appellant, and I have found no legislative declaration of public policy against such picketing. It further found that the picketing was not coercive and that it was, in fact, peaceful. The facts as found by the trial court establish peaceful picketing for organizational purposes, which is not in violation of the law; therefore, I would affirm the judgment.

---

September 12, 1956.  Petition for rehearing denied.