[No. 34563.  *En Banc.*  October 9, 1958.]

H. G. BURKHAMER, *Appellant,* v. RETAIL CLERKS UNION, LOCAL No. 629 *et al., Respondents.*[1]

*John H. Kirkwood,* for appellant.

*Ray W. DeKraay,* for respondents.

HILL, C. J.—The owner of two grocery stores seeks to enjoin the retail clerks union, the Grays Harbor central labor council, and certain individuals from picketing his stores.

There is a single picket, if we may call him such, a "sandwich man," who bears a sign fore and aft which reads, "WE DO NOT PATRONIZE FAIRWAY GROCERY GRAYS HARBOR CENTRAL LABOR COUNCIL." He appears across the street

[1] Reported in 330 P. (2d) 314.

from the plaintiff's Hoquiam store and from his Cosmopolis store on alternate days, and walks a block or two each way, but comes no closer to the plaintiff's stores than sixty or seventy feet. He refrains from conversation with any member of the public, unless spoken to; he does not seek to determine the identity of any person entering or leaving plaintiff's stores, nor does he attempt to make a list of such persons.

There are no union members employed in the plaintiff's stores. The case does not involve a labor dispute; indeed, the union says that they do not want a contract with the plaintiff, and the defendants desire only to publicize the fact that he is on the central labor council's "we do not patronize list."

This is a most unusual case. There is no violence; there is no intimidation; there is no coercion; there is no name calling; in fact, there is no picket line in the usually accepted sense of that term. Teamsters are advised that it is not a picket line and that they are not to refuse to make deliveries.

The trial court found that the action of the defendants was persuasive and not coercive, and refused to enjoin their activities. The plaintiff appeals.

The defendants urge that this is just a classic example of the exercise of their constitutional right of freedom of speech. Their right to publish a list of those who are apparently not in accord with the aims and objectives of a union or a labor council in a "we do not patronize list" has never been questioned. They urge that the procedure of which the plaintiff complains is only a further publicizing of the fact that they do not patronize the plaintiff's stores.

The plaintiff urges on this appeal that while picketing may be regarded as a mode of communication, which under some circumstances finds sanction in the fourteenth amendment, yet in the words of the United States supreme court in *Hughes v. Superior Court of California* (1950), 339 U. S. 460, 464, 94 L. Ed. 985, 992, 70 S. Ct. 718, 721,

" . . . while picketing is a mode of communication it is inseparably something more and different. Industrial

picketing 'is more than free speech, since it involves patrol of a particular locality and since the very presence of a picket line may induce action of one kind or another, quite irrespective of the nature of the ideas which are being disseminated.' Mr. Justice Douglas, joined by Black and Murphy, JJ., concurring in *Bakery & Pastry Drivers & Helpers, Local v. Wohl*, 315 U. S. 769, 775, 776, 86 L. ed. 1178, 1183, 1184, 62 S. Ct. 816. Publication in a newspaper, or by distribution of circulars, may convey the same information or make the same charge as do those patrolling a picket line. But the very purpose of a picket line is to exert influences, and it produces consequences different from other modes of communication. The loyalties and responses evoked and exacted by picket lines are unlike those flowing from appeals by printed word. . . ."

This case offers the opportunity for a long philosophical treatise, which we eschew because the principles laid down in our recent case of *Audubon Homes v. Spokane Bldg. & Constr. Trades Council* (1956), 49 Wn. (2d) 145, 298 P. (2d) 1112, seem to us determinative of the present controversy. In that case, as here, there was no labor dispute within the purview of Laws of 1933, Ex. Ses., chapter 7, p. 10; RCW 49.32.

In that case, we suggest that if picketing is merely persuasive, it is within the constitutional guarantee of free speech; if it is coercive, it is against the state's public policy.

We regard this as an adequate basis for the determination of the present controversy, but without implication that injunctive rights—where there is no labor dispute—are limited to situations where the picketing is against the state's public policy. Tortious conduct will, under certain conditions, be restrained. The legality of picketing, which does not arise out of a labor dispute, depends upon the propriety of its objectives. There may be a balancing of rights and consequences, for as we pointed out in *Hanke v. Teamsters Union* (1949), 33 Wn. (2d) 646, 660, 207 P. (2d) 206, 213,

" . . . there is small reason for holding that the appellant union, acting under the guise of protecting the union's freedom of speech, cannot be restrained from depriving the

respondents of the liberty of lawfully conducting their business in the only manner that it could be profitably conducted."

Fitting the present case into the persuasive-coercive distinction of the *Audubon Homes* case, there is no evidence that the plaintiff, his employees, or his customers are being coerced to do anything.

It is stipulated that there is no evidence of any damages sustained by the plaintiff. He may lose some customers in consequence of this particular method of publicizing the fact that the Grays Harbor central labor council does not patronize him (and that, unquestionably, is their hope and their purpose), but it does not establish a right to an injunction.

The defendants are using persuasion and not coercion, and tortious conduct is not involved.

The plaintiff relies upon *Fornili v. Auto Mechanics' Union* (1939), 200 Wash. 283, 93 P. (2d) 422, but it appears from the opinion in that case that the purpose of the union was either coercive or punitive. Neither coercion nor punishment is here suggested as a motive for having the "sandwich man" across the street from the plaintiff's stores from time to time.

The evidence does not preponderate against the finding of the trial court,

". . . That the activity of the defendants is persuasive, not coercive, and said activity is to notify union members of businesses that are entitled to the patronage by union members.

"That the purpose of the 'sandwich board' carried by defendant Bleshers was to advertise to the 4,000 members affiliated with the defendant, Grays Harbor Central Labor Council, that plaintiff's stores were non-union and by this means help and protect the union grocery establishments."

The judgment of the trial court dismissing the plaintiff's action for an injunction is affirmed.

DONWORTH, FINLEY, WEAVER, ROSELLINI, OTT, FOSTER, and HUNTER, JJ., concur.

MALLERY, J. (concurring)—The respondents, because of their ill will, are deliberately trying to injure the appellant. The rule that one who intentionally or negligently injures another must respond in damages is the cornerstone of the law of torts, and is as old as the common law itself.

I concur in the result of the opinion because the record herein does not establish that the respondents have succeeded or are about to succeed in their purpose. Their future success or the eminent likelihood thereof will render them amenable to the remedies of the law.