Sydney F. Foster, J.
In this proceeding, pursuant to article 78 of the CPLR, petitioner, the distributor of a motion picture entitled “The Unsatisfied ”, seeks a judgment directing the respondent Board of Regents to issue a license for its film. The Board of Regents, by way of counterclaim, seeks a declaration: (1) that the film is obscene within the meaning of section 122 of the Education Law and not entitled to be licensed; and (2) that part II of article 3 of the Education Law (§§ 120-132) and section 221 (8 NYCRR 12.9) of the Rules of the Board of Regents as adopted March 26, 1965 are valid and constitutional. Upon the argument of this motion, counsel for the Board of Regents asserted that this proceeding should be transferred to the Appellate Division ( CPLR 7804, subd. [g]), but as will be noted in the opinion, the nature of the proceeding and current case law make it one which must he passed upon by this court.
Pursuant to statute (Education Law, § 122) and the Rules of the Board of Regents relating to its Motion Picture Division (8 NYCRR, part 12, §§ 12.1-12.10), petitioner, on or about November 30. 1964. applied for a license to exhibit the above-entitled motion picture. On December.!!. 1964, the Motion Picture Division, after a review of the film, directed that certain eliminations be made in scenes which were found to be obscene. In pursuance of a request for re-examination (8 NYCRR 12.4), the Director of the Division, on December .16,.. .1964, sustained *515 the original determination with one exception. Thereafter the petitioner, on February 23, _ 1965, appealed to the Board of Regents (Educatíoñ_Law~WT24; 8 NYlCRR 12.9),* and a committee thereof, after viewing the film, unanimously concluded on March 26,1965 that the decision of the Director of the Motion Picture Division should be sustained. On the same day the Board of Regents voted to confirm the action of the committee and directed “ that appropriate action be instituted forthwith for judicial determination as to the exhibition of such motion picture ’
It appears that this direction was in accordance with new rule 221 (8 NYCRR 12.9) which was adopted by the Regents on March 26, 1965 (filed with the Secretary of State on March 30, 1965). The-nesomle-provides:
‘ ‘ Procedure on review.
“ (a) Within fivg. days after the submission of a motion picture to the division, the director of the division shall render a determination thereon. In the event that an application for a license or permit is not granted by the director of the division or by an officer authorized to issue the same, such action of the director or officer shall be reviewed pursuant to section 124 of the Education Law.
“ (b) Such review shall be by the Commissioner of Education or by an deputy, associate or assistant commissioner designated by him, who shall hear and determine the matter within seven days after the determination of the director or other officer not to grant such license or permit.
“(c) In the event that an application for a license or permit is denied by the commissioner or other designated officer upon reveiw, the department shall forthwith institute appropriate action for judicial determination as to the exhibition of such motion picture.”
No action, however, was taken by the Board of Regents until petitioner obtained an order to show cause on April 7, 1965 instituting the present proceeding.
What precipitated the adoption of the new rule was the determination of the Supreme Court of the United States on March 15, 1965 in Trans-Lux Distr. Cory, v. Board of Regents (380 *516 U. S. 259), reversing the New York Court of Appeals (14 N Y 2d 88*) in a Per Curiam decision merely citing the ease of Freedmcm v. Maryland (380 U. S. -51 [decided March 1, 1965]). I think it is a fair interpretation to say that the Supreme Court held in Freedman v. Maryland {supra) that the Maryland motion picture censorship statutory scheme failed to provide adequate safeguards against undue inhibition of protected expression; and therefore this failure rendered the Maryland requirement of prior submission of films to a reviewing board an invalid previous restraint. As Mr. Justice Douglas pointed out in his concurring opinion in the Freedman case {supra, p. 61, n.), the court held “ that a system of movie censorship must contain at least three procedural safeguards if it is not to run afoul of the First Amendment: (1) the censor must have the burden of instituting judicial proceedings; (2) any restraint prior to judicial review can be imposed only briefly in order to preserve the status quo; and (3) a prompt judicial determination of obscenity must be assured”. The Supreme Court carefully did not strike down submission of motion pictures in advance of exhibition as necessarily unconstitutional (see, also, Cate Film Club v. Pesce, 236 F. Supp. 828, affd. 389 F. 2d 888, cert, den. 380 TJ. S. 944 [March 15,1965]; Times Film Corp. v. Chicago, 365 U. S. 43), but the court did emphasize once again that “ ‘ [a]ny system of prior restraints of expression comes to this Court bearing a heavy presumption against its constitutional validity. ’ Bantam Books, Inc. v. Sullivan, [372 U. S. 58], at 70.” Freedman v. Maryland, 380 U. S. 51, 57, supra.)
The reasoning of the Freedman case applies with equal force to the New York procedural scheme (Trans-Lux Distr. Corp. v. Board of Begents, 380 U. S. 259, supra): the absence in our laws of “ adequate safeguards against undue inhibition of protected expression” (Freedman v. Maryland, 380 U. S. 51, 60, stopra) renders invalid the underlying requirement of prior submission to censorship. (See, also, Matter of Trans-Lux Distr. Corp. v. Board of Regents, 16 N Y 2d 536, in which the Court of Appeals denied a motion by the Board of Begents to stay the showing of the picture, “ A Stranger Knocks”, which had already opened for exhibition in New York City following the decision of the Supreme Court. Although the Court of Appeals had held certain scenes in the film to be obscene (14 N Y 2d 88, supra), it is nowhere argued that the reversal by the Supreme Court was on grounds other than the procedural deficiencies of the New York licensing scheme.)
*517 The statutory procedure for review in New York is incorporated in section 124 of the Education Law, which provides: “ An applicant for a license or permit, in case his application be denied by the director of the division or by the officer authorized to issue the same, shall have the right of review by the regents. The regents, however, by rule may provide that such reviews may be heard and determined by a committee of the regents, the commissioner of education, the deputy commissioner of education or an assistant commissioner of education. A determination upon said review refusing a license shall be veviewable by a proceeding under article seventy-eight of the civil practice act ['CPLR] at the instance of the applicant.” (Emphasis supplied.) It is this very statute, as well as previous rule 221 implementing the statute, Avhich the Board of Regents seeks to modify by the new rule. Although it is undoubted that the Regents are delegated with legislative powers in carrying out and enforcing the powers, duties or trusts conferred upon them (Education Law, §§ 207, 132), it can scarcely be argued that, beyond prescribing the procedure for review within the Education Department, the Board of Regents may in effect change the language of a statute or adopt an entirely new licensing scheme. (N. Y. Const., art. III, § 1; see, e.g., Brown v. University of State of New York, 242 App. Div. 85, 87, affd. 266 N. Y. 598.)
Furthermore, such a licensing scheme must go far beyond what the Regents adopted on March 26, 1965 in order to meet the rigid requirements set down by the Supreme Court in the afore-mentioned decisions. Without reaching any question of Avhether the time periods for review within the department as set down in the new rule meet the constitutional test that ‘ ‘ Any restraint imposed in advance of a final judicial determination on the merits must * * # be limited to preservation of the status quo for the shortest fixed period compatible with sound judicial resolution ’ ’, there will have to be provided at the very least: (1) authority for the Board of Regents to institute “ within a specified brief period ” judicial action “ to restrain showing the film” in the event that a license is not issued administratively, since the “ burden of proving that the film is unprotected expression must rest on the censor ” and not upon the applicant as section 124 of the Education Law now establishes; and (2) a judicial procedure to “ assure a prompt final judicial decision, to minimize the deterrent effect of an interim and possibly erroneous denial of a license ”, (Freedman v. Maryland, 380 U. S. 51, 58-59, supra.) This latter safeguard would seem to require that definite time limits be specified for *518 court determination of the appropriate proceeding. Such a requirement, it can be argued, may only be imposed by the Legislature. (See, e.g., Code Grim. Pro., § 22-a, subd. 2; Books v. Brown, 354 U. S, 436.)
Lacking these safeg rards, which will have to be drawn carefully in order to avoid constitutional infirmity, it is my eonclusion that no valid licensing system of motion pictures now exists in New York, and, thus, the statute presently in force (part II of article 3 [§§ 120-132] of the Education Law) and the Rules of the Board of Regents adopted thereunder are unconstitutional ; and therefore the court has no jurisdiction to entertain an action to declare that the film, ‘ ‘ The Unsatisfied ’ ’, is obscene within the meaning of section 122 of the Education Law. Having reached this conclusion concerning the constitutionality of the licensing scheme, 1 find it impossible to accept petitioner’s argument in this proceeding that a license must be directed for its film upon the ground that licensing per se is not unconstitutional. To do so would not only make the granting of a license a pro forma ministerial duty on 'the part of the Board of Regents, but such a direction would' force the court to impel approval of a motion picture found- to be obscene by the Regents. In the absence of further legislative authority incorporating the required procedural safeguards in the New York statutory scheme, the present petitioner is left, as is the distributor in Trans-Lux Distr. Corp. v. Board of Regents (380 U. S. 259, supra), to enter the market place with other forms of expression, subject to the appropriate penal statutes and independent determinations on the question of the obscenity of their motion pictures.
Let judgment be entered (1) denying relief in the nature of mandamus as demanded by the petitioner; (2) dismissing that portion of the counterclaim brought by respondent to declare the film, “The Unsatisfied”, obscene within the meaning of section 122 of the Education Law; and (3) declaring that part II of article 3 of the Education Law as now existing and section 221 of the Rules of the Board of Regents as adopted March 26, 1965 arc invalid and unconstitutional.

 Prior to its amendment by the Board of Regents on March 26, 1965, Rule 221 (8 NYiCRR 12.9) provided: “Procedure on review. In the event an application for license or permit is denied by the director of the division, or by an officer authorized to issue the same, the action of such director or officer, in denying the issuance of such license or permit, may be reviewed on appeal by the applicant to the Board of Regents, which said appeal shall be heard and determined either by the Board of Regents or a committee thereof.”

 Remittitur amended, 16 N Y 2d 710.— [Rep.