(Nos. 40214, 40215.—

JOHN F. CUSACK *et al.,* Appellees, *vs.* TEITEL FILM CORPORATION *et al.,* Appellants.

*Opinion filed September 29, 1967.*

MILLER AND MILLER, and ELMER GERTZ, both of Chicago, for appellants.

RAYMOND F. SIMON, Corporation Counsel, of Chicago, (SYDNEY R. DREBIN and MARVIN E. ASPEN, of counsel,) for appellees.

Mr. CHIEF JUSTICE SOLFISBURG delivered the opinion of the court:

The defendants, Teitel Film Corporation and Charles Teitel, appeal directly to this court from orders of the circuit court of Cook County permanently enjoining the defendants from showing certain motion pictures in public places in the city of Chicago. The injunction orders were issued as a result of separate proceedings brought by the members of the Motion Picture Appeal Board of Chicago to enjoin defendants from exhibiting a film entitled "Rent-A-Girl" and another entitled "Body of a Female". Since

the defendants seek review of the rulings regarding each film on identical grounds, we have consolidated the cases for review.

Defendants contend that (1) the Chicago ordinance under which these proceedings were instituted and the actions of the Motion Picture Appeal Board are unconstitutional and violate the provisions for freedom of expression, due process, and protection againt unreasonable searches and seizures under the United States and Illinois constitutions; (2) the films in question are not obscene; (3) the trial court erred in ruling on certain objections of the defendants relating to the pleadings and in denying defendants' motion to strike and dismiss the amended complaints.

Case No. 40215 relates to the film entitled "Body of a Female." On September 2, 1965, the defendants submitted this film to the Film Review Section of the Chicago Police Department for screening in accordance with the provisions of the Chicago Motion Picture Ordinance. On that same date the film was reviewed and rejected. Five months later, on February 9, 1966, the defendants applied to the Chicago Motion Picture Appeal Board for a review of this ruling. The appeal board viewed the film on February 28, 1966, and a hearing was held on March 7, 1966, resulting in a decision to uphold the determination of the Chicago Police Department rejecting the film "Body of a Female" for licensing. Notice of this decision was mailed to the defendants on March 7, and on March 11, 1966, the board filed a complaint in the circuit court of Cook County seeking a permanent injunction against the exhibition of this film in public.

Case No. 40214 deals with the film entitled "Rent-A-Girl." This film was submitted to the Chicago Police Department for review on December 3, 1965, and was subsequently screened and rejected on December 6, 1965. Defendant was notified of this rejection on December 6 and applied for review to the Motion Picture Appeal Board on

January 5, 1966. The board screened the film on January 24 and a hearing was held on January 31 resulting in the decision to uphold the police department's rejection of the film. Notice of this action was mailed to the defendants on February 1, 1966, and a complaint seeking a permanent injunction against the exhibition of "Rent-A-Girl" was filed by the board on February 9, 1966.

Defendants filed motions to strike and dismiss in both cases and in each instance the motion was granted with leave given to the plaintiffs to file amended complaints. Amended complaints seeking injunctions against the showing of both pictures were subsequently filed on May 20, 1966, and again defendants filed motions to strike and dismiss. The films were subsequently reviewed by the court and a hearing on defendants' motion to strike was held on June 22, 1966. Thereafter the trial court filed memorandum opinions in both cases No. 40215 and No. 40214 on August 3, 1966, finding the films to be obscene and denying defendants' motions. On August 8, 1966, the injunction orders appealed from were entered.

The defendants initially contend that the Chicago Motion Picture Ordinance is violative of the due-process and free-expression provisions of the United States and Illinois constitutions.

The ordinance in question, chapter 155 of the Municipal Code of the city of Chicago, sets forth licensing procedures for motion pictures for exhibition in the city of Chicago. The ordinance was originally enacted in 1939 and was amended in 1961 by the creation of the Motion Picture Appeal Board. It was again amended in 1967 after the proceedings involved in the present cases took place.

The ordinance provides, in effect, that before a motion picture may be shown in the city of Chicago, the film along with a written application for exhibition permit must be submitted to the superintendent of police. Section 155—2 of the ordinance provides that either the superintendent or

the Film Review Section, acting under the superintendent, shall inspect the film and either grant or deny an exhibition permit within three days after such inspection.

Section 155—7.1 of the ordinance creates the Motion Picture Appeal Board and provides that "within seven days after rejection by the Superintendent of Police, the applicant may file a written request with the Motion Picture Appeal Board for review of the decision of the Superintendent." The section goes on to provide that the film in question shall be made available to the board for examination, which examination must take place within 15 days of the request for review. Within 15 days after reviewing the picture and before any determination is made by the board, the applicant for the permit shall be given a hearing at which time he may present testimony or arguments in support of the exhibition of the film. The board then has five days after the hearing in which to serve written notice of its ruling upon the applicant.

Section 155—7.2 provides that if the Motion Picture Appeal Board affirms the decision of the superintendent of police in rejecting the application, the board must, within 10 days after the hearing, file an action for an injunction against the showing of the film with the circuit court of Cook County. It should here be noted that general order No. 3—3 of the circuit court of Cook County provides that a hearing on a complaint for an injunction pursuant to chapter 155 must be held within 5 days after the filing of an answer, or if the complaint is not answered, within 5 days after the last day allowed for the filing of an answer.

The defendants initially contest the validity of the entire proceedings on the ground that the Chicago Motion Picture Ordinance under which they were instituted does not provide sufficient procedural safeguards to protect the defendants' constitutional rights of due process. Before discussing the sufficiency of these safeguards, however, we must first determine whether, as defendants contend, the ordinance is

invalid on its face as being a prior restraint upon freedom of expression as guaranteed by the Illinois constitution.

Although defendants do not contest the holding of the United States Supreme Court that obscenity is not protected expression under the first and fourteenth amendments to the United States constitution (*Roth* v. *United States,* 354 U.S. 476, 1 L. Ed. 2d 1498), they argue that all motion pictures are protected under section 4 of article II of the Illinois constitution, which provides that, "every person may freely speak, write and publish on all subjects, being responsible for the abuse of that liberty \* \* \*." This section of the Illinois constitution was discussed by this court in *Montgomery Ward & Co.* v. *United Retail, Wholesale & Dept. Store Employees,* 400 Ill. 38, in connection with the application for an injunction to stop malicious libel. It was there observed that the free-expression provision in the Illinois constitution was broader than that of the constitution of the United States. Relying on *Montgomery Ward* the defendants urge that the Illinois constitution allows a "broader" and therefore more permissive approach to obscenity than does the United States constitution. We do not agree. The holding in *Montgomery Ward* dealt solely with the validity of the remedy of injunctions in libel cases and has no bearing upon the question of whether obscenity is protected expression under section 4 of article II and therefore free from prior restraints.

Lest any further confusion reign in this area, however, we herewith specifically adopt the reasoning set down by the United States Supreme Court in *Roth* and hold that the language of section 4 of article II of the Illinois constitution does not extend to a protection of obscenity. In *Times Film Corp.* v. *City of Chicago,* 365 U.S. 43, 5 L. Ed. 2d 403, the United States Supreme Court held that the Chicago Motion Picture Ordinance, by requiring the submission of all motion pictures to a censor prior to exhibition did not, upon its face, necessarily violate the freedom of speech guaranteed

by the first and fourteenth amendments to the Federal constitution. We hold that such a prerequisite likewise does not necessarily violate any constitutional guarantees of the Illinois constitution.

We do not mean to imply, however, that prior restraints on the exhibition of motion pictures are constitutional under all circumstances. Indeed, as was pointed out in *Bantam Books, Inc.* v. *Sullivan,* 372 U.S. 58, page 70, 9 L. Ed. 584, at 593: "Any system of prior restraints of expression comes to this Court bearing a heavy presumption against its constitutional validity." When this validity is challenged, as here, "The judicial angle of vision  *  *  *  is 'the operation and effect of the statute in substance'." *Kingsley Books, Inc.* v. *Brown,* 354 U.S. 436, 1 L. Ed. 2d 1469, 1474.

Our "angle of vision" is not without guidelines. The United States Supreme Court was called upon to examine the constitutionality of a motion picture statute containing prior restraints in *Freedman* v. *Maryland,* 380 U.S. 51, 13 L. Ed. 2d 649. There the court, although upholding the ruling in *Times Films* that a prior restraint is not necessarily unconstitutional, stated at pp. 58-59: "Applying the settled rule of our cases, we hold that a noncriminal process which requires the prior submission of a film to a censor avoids constitutional infirmity only if it takes place under procedural safeguards designed to obviate the dangers of a censorship system. First, the burden of proving that the film is unprotected expression must rest on the censor.  *  *  *  Second, while the State may require advance submission of all films, in order to proceed effectively to bar all showings of unprotected films, the requirement cannot be administered in a manner which would lend an effect of finality to the censor's determination whether a film constitutes protected expression. The teaching of our cases is that, because only a judicial determination in an adversary proceeding ensures the necessary sensitivity to freedom of expression, only a procedure requiring a judicial determina-

tion suffices to impose a valid final restraint. * * * To this end, the exhibitor must be assured, by statute or authoritative judicial construction, that the censor will, within a specified brief period, either issue a license or go to court to restrain showing the film. Any restraint imposed in advance of a final judicial determination on the merits must similarly be limited to preservation of the status quo for the shortest fixed period compatible with sound judicial resolution. Moreover, we are well aware that, even after expiration of a temporary restraint, an administrative refusal to license, signifying the censor's view that the film is unprotected, may have a discouraging effect on the exhibitor. * * * Therefore, the procedure must also assure a prompt final judicial decision, to minimize the deterrent effect of an interim and possibly erroneous denial of a license."

After enunciating these guidelines the court in *Freedman* stressed that, while it was up to the local authorities to incorporate these procedural safeguards in the censorship ordinances, it was not attempting to lay down rigid time limits or procedures. It is defendants' contention, however, that these safeguards have not been incorporated into the Chicago ordinance. They first argue that the ordinance violates the *Freedman* rules by placing the burden upon the exhibitor to appeal from an adverse determination by the superintendent of police. Section 155—7.1 of the ordinance provides that after a film has been rejected by the superintendent of police, the applicant has 7 days to request review by the Motion Picture Appeal Board. This section, rather than placing a burden upon the exhibitor, affords him a remedy and opportunity for review within the administrative proceedings. Such a section can hardly result in a deprivation of a defendant's constitutional rights and to argue otherwise is to misconstrue the holding in *Freedman*. The evil there sought to be corrected by the establishment of the first safeguard was the requirement in the Maryland

ordinance that once a censor disapproved a film, the burden of instituting judicial proceedings and of persuading the courts that the film is protected expression was upon the exhibitor. No such requirement is contained in the Chicago ordinance. In fact, section 155—7.2 specifically provides that the Motion Picture Appeal Board must commence legal proceedings if an injunction is required. We conclude, therefore, that the procedures established by the Chicago ordinance do not violate the first safeguard established by *Freedman*.

The defendants next charge that the ordinance violates *Freedman* by providing no safeguards against unreasonable delay both in the administrative proceedings and in obtaining a judicial determination on the issue of obscenity. As far as the administrative proceedings are concerned, the ordinance itself sets forth a schedule of 50 days for the total administrative reviewing of the film—from the time of inspection by the superintendent of police or Film Review Section to the filing of a suit for injunction by the board in the circuit court. It appears from the record, however, that 68 days elapsed in case No. 40214 and 190 days in case No. 40215, and both plaintiffs and defendants allow substantial space in their briefs to attributing the delay to the other side.

Insofar as a judicial determination by the circuit court is concerned, the record shows that the elapsed time between the submission of case No. 40214 ("Rent-A-Girl") to the superintendent of police and the order of the trial court permanently enjoining the film from being shown was approximately 9 months. The elapsed time in the proceedings relating to case No. 40215 ("Body of a Female") was approximately 11 months. Again, each side charges the other with causing the delay.

After careful consideration, however, we find it unnecessary to resolve the question of whether plaintiffs or the defendants caused all of the delay. We look rather to the

ordinance itself, in the light of *Freedman* and subsequent cases, and conclude that the administration of the Chicago Motion Picture Ordinance violates no constitutional rights of the defendants.

This decision is based upon our feeling that, contrary to the defendants' interpretation of *Freedman*, it is impossible to measure constitutional rights in terms of days, particularly where, as here, the defendants contributed substantially to the delay. The defendants, in seeking to prove that the administration of the ordinance in question results in delays, or at least is time-consuming, cite several cases in which censorship statutes have been struck down. In each of these cases, however, the facts are substantially different from those before us. In *Embassy Pictures Corp.* v. *Hudson*, 242 F. Supp. 795, the Memphis ordinance contained, as did the Maryland statute in *Freedman*, a requirement that the applicant must initiate judicial procedure from the board's action. We have previously noted that no such requirement is contained in the Chicago ordinance. The ordinance in *Cambist Films, Inc.* v. *Board of Regents*, 260 N.Y.S.2d 804, was struck down because there was no guarantee that the Board of Regents would take prompt judicial action after refusing to license a film. Section 155—7.2 of the Chicago ordinance, as we have noted, provides that the board has 10 days after its hearing to initiate legal proceedings.

In addition to the above cases the defendants place great reliance on *Interstate Circuit, Inc.* v. *City of Dallas*, (5th cir.) 247 F. Supp. 906, wherein the court struck down a censorship ordinance providing that the board's order classifying the suitability of films for young people would be suspended unless an injunction was issued within 15 days after the filing of a notice of nonacceptance of the order by the exhibitor. Although there were other defects found in the statute, the court specifically held that the aforementioned provision was so vague and indefinite as

to make the exhibitor's right to a speedy determination of the issue uncertain, thus depriving him of due process of law. As the plaintiffs note, however, the ordinance in the *Interstate Circuit* case was amended after it had been stricken and, as amended, was upheld by the Court of Appeals in *Interstate Circuit, Inc.* v. *City of Dallas,* (5th cir.) 366 Fed. 2d 590. The amended statute, approved on appeal, did nothing to make the provision in question any more specific, but rather provided that the board must seek an injunction within 3 days and apply for a hearing on the injunction within 5 days. The ordinance went on to provide that if the injunction is allowed and the exhibitor appeals, the censor must waive all statutory notices and file its reply to the exhibitor's brief within 5 days.

Although the Chicago ordinance, at the time of the proceedings herein, did not specifically require immediate viewing of the submitted film by the police superintendent, we find this to be relatively unimportant since, as pointed out earlier in this opinion, "Rent-A-Girl" (case No. 40214) was submitted on Friday, December 3, 1965, and screened and rejected on Monday, December 6, 1965; "Body of a Female" (case No. 40215) was both submitted, screened and rejected on September 2, 1965. We further point out that section 155—2 of the ordinance was amended by the Chicago city council on April 21, 1967. This amendment, admittedly having little effect on the proceedings involving the defendants, provides that the police superintendent or the Film Review Section must inspect films submitted to them within 3 days of their receipt. Notwithstanding, then, the absence of this requirement at the time these proceedings were initiated, we are of the opinion that the time limits provided by the ordinance are such as are reasonably necessary to insure an intelligent and careful consideration, by both the Film Review Section and the appeal board of the material in question. The restraint contemplated by the ordinance is to assure a submitted film of obtaining care-

ful consideration in the light of contemporary community standards relating to obscenity. Moreover, although we recognize that delay may result from failure to follow the procedures set out by the ordinance, we found nothing in the ordinance itself which would preclude a reasonably prompt judicial determination of whether a particular film is constitutionally protected. In fact general order No. 3—3 of the circuit court of Cook County, cited earlier in this opinion, specifically provides that a hearing shall be held within 5 days after the defendant answers the plaintiff's complaint, or if the defendant does not answer within 5 days after the last day allowed for the filing of an answer. We conclude that the ordinance, together with the general order, provides sufficient safeguards to assure an exhibitor of a prompt judicial hearing within the meaning of *Freedman* and thus, protects his rights to due process and free expression.

The defendants further contend that the appeal board has unlawfully confiscated the films in question, thereby denying the defendants of due process. We dispose of this argument by pointing out that no confiscation or seizure actually took place. The films were submitted by the defendants to the Film Review Section and again submitted to the appeal board when defendants sought review of the decision to reject the films. Consequently, defendants can hardly argue that the retention of the films by the board during the screening and subsequent hearing constitutes illegal seizure. Furthermore, the defendants themselves objected to the original complaints filed by the board with the circuit court on the grounds that the films were not attached and made a part thereof. Plaintiffs subsequently amended their complaints and attached the films, thus making them part of the record. As such, it lies within the discretion of the judge to determine when the films may be returned to the defendants. Since we found it necessary to view the films in considering defendants' contentions on

appeal, we conclude that neither the trial judge nor any other court official has denied defendants due process by withholding the films while they are still involved in this litigation. We therefore conclude that the Chicago Motion Picture Ordinance is valid.

We now must consider the defendants' contention that the films are not obscene. The plaintiffs argue that this contention has been improperly asserted at this time. After the trial court filed its memorandum opinions denying the defendants' motion to strike and dismiss the amended complaints, the defendants elected to stand on their motions rather than file answers to the amended complaints. It is plaintiffs' position that this election prevents defendants from now raising the question of obscenity since their "motion to strike and dismiss the amended complaints admitted that the films 'Rent-A-Girl' and 'Body of a Female' were obscene." While it is true that a motion to strike a complaint admits the facts contained therein, this admission does not extend to conclusions of law. (*Pierce* v. *Carpentier,* 20 Ill.2d 526.) Although we find that the amended complaints, together with the copies of the films attached thereto, allege sufficient facts tending to prove that the films are obscene, the assertion that they are, in fact, obscene constitutes a legal conclusion drawn by the plaintiffs and consequently we hold that the issue of obscenity has not been admitted by the defendants' motions to strike and subsequent election to stand on their motions.

We turn now to the contention that the trial court used improper standards in determining the films to be obscene. The trial judge, after having viewed the films and listened to oral arguments, found the movies to be obscene and denied defendants' motions to strike the amended complaints and further ordered the exhibitions of the films to be permanently enjoined. Both in the memorandum opinions and in the orders, the trial judge found that each film was obscene within the meaning of section 155 of the Municipal

Code of Chicago and the decisions of the United States Supreme Court in that, (a) to the average person, applying contemporary community standards, both national and local, the dominant theme of the films taken as a whole appeals to the prurient interest, that is, a shameful or morbid interest in nudity, and sex, which interest goes substantially beyond the customary limits of candor in description or representation of such matters; (b) the films are utterly without redeeming social, artistic, literary, scientific or other such similar importance; (c) the films are patently offensive, that is, they affront current community standards of decency; (d) when considered as a whole, the calculated purpose of the films is substantially to arouse sexual desires in the normal average person.

The defendants admit that the trial court included the proper standards for determining obscenity in its list of reasons, but asserts that improper standards were also listed, and consequently "there is no way of telling whether the proper standards were actually applied or whether they were merely set out in an attempt to give lip service to them."

The prurient interest standard used by the trial judge was established by the United States Supreme Court in *Roth* v. *United States,* 354 U.S. 476, 1 L. Ed. 2d 1498. The defendants do not object to this standard as a test for determining obscenity, but object to the manner of its application. The court in *Roth* did not indicate whether the "contemporary community standards" to be applied were to be those of a national or a local standard. In subsequent cases the Supreme Court was confronted by this problem and in both *Manual Enterprises, Inc.* v. *Day,* 370 U.S. 478, 8 L. Ed. 2d 639, and in *Jacobellis* v. *Ohio,* 378 U.S. 184, 12 L. Ed. 2d 793, several Justices thought the applicable standard to be national rather than local. As this court pointed out in *People* v. *Sikora,* 32 Ill.2d 260, 264, however, the United States Supreme Court has been unable to

reach a majority view as to which standard should be applied. Both in *Sikora* and in *City of Chicago* v. *Universal Publishing and Distributing Corp.*, 34 Ill.2d 250, we found it unnecessary to determine this issue. In view of the fact that the trial judge here appraised the films in terms of both national and local community standards, we again find no reason to decide the question.

The second standard used by the trial judge is also derived from *Roth* wherein the court stressed that obscenity has no redeeming social importance.

The prurient interest standard of *Roth* was expanded in *Manual Enterprises* v. *Day,* where the court added the patent offensiveness test in determining whether material was obscene under 18 U.S.C.A. sec. 1461, which bars obscene material from the mails. In view of *Manual Enterprises,* therefore, we hold that the third standard used by the trial judge was also appropriately applied in determining whether the films were obscene.

The standard to which the defendants most strenuously object is the fourth and last one to be found in the memorandum opinions of the trial judge, to-wit: "When considered as a whole, the calculated purpose of the film[s] [are] substantially to arouse sexual desires in the normal, average person." The defendants contend that this criterion has no sanction in law as a standard and is completely irrelevant to this inquiry. On the basis of recent decisions in the United States Supreme Court we agree with the defendants that this standard, taken alone, would not be a sufficient basis for determining a particular film to be obscene. The mere fact that material is calculated to arouse the sexual desire of a normal, average person does not necessarily render that material patently offensive, nor does it automatically bring it within the range of that material appealing to the prurient interest. Although the portrayal of sexual activities could reasonably tend to arouse sexual desires in an average person, this in and of itself does not

render the portrayal obscene and, as pointed out in *Roth,* "sex and obscenity are not synonymous." As defined in *Roth,* "prurient interest" is a shameful and morbid interest in nudity, sex or excretion. Furthermore, the *Roth* standard requires a finding that the material "goes substantially beyond customary limits of candor in description or representation of such matters." The plethora of opinions attempting to adequately and definitively determine what material is and what is not obscene vividly illustrates the difficulties encountered in this area.

We do not find that the inclusion of this standard voids the finding that the films are obscene. Here the court specifically used the prurient-interest and patent-offensiveness standards in reaching its decision. Since, as we have pointed out, these guidelines have been approved, we hold that the consideration of additional, unapproved, guidelines does not deprive the defendants of any constitutional protection.

The defendants further contend that the rulings of the trial court were improper because the board did not offer or present any evidence to support its own findings other than the films themselves. We note, however, that the defendants offered no evidence relating to contemporary community standards, either on a local or national level, and in the absence of such evidence, the triers of fact are the exclusive judges of what the common conscience of the community is. (*Roth* v. *United States,* 354 U.S. 476; *City of Chicago* v. *Kimmel,* 31 Ill.2d 202.) In the absence of any other evidence, therefore, we hold that it was proper for the trial court to base its opinion upon the films, taking into consideration the constitutionally approved standards for determining whether they were or were not obscene.

Defendants also point out that they offered to edit the films to conform to the board's standard, but that this offer was ignored. *Roth* v. *United States,* 354 U.S. 476, at page 489, established, however, that a film must be taken as a

whole in considering whether or not it is obscene. The amended complaint alleged, and the opinion of the trial court found, that the dominant theme of the films, taken as a whole, appeals to the prurient interest. Consequently defendants' offer to amend particular scenes would have little or no effect upon its impact as a whole.

Having ruled that the majority of the standards used by the trial court in reaching its decision have been approved by the United States Supreme Court, the nature of the issues involved necessitates a determination by us as to whether these films are obscene. Resolution of this issue requires an independent constitutional judgment by us as to whether these films fall within or beyond the constitutional guarantees of freedom of speech incorporated in the first amendment to the United States constitution and section 4 of article 2 of the Illinois constitution. *Jacobellis* v. *Ohio,* 378 U.S. 184, 12 L. Ed. 2d 793; *City of Chicago* v. *Kimmel,* 31 Ill.2d 202.

"Rent-A-Girl", the film sought to be enjoined in case No. 40214, is described by the defendants as a documentary. The opening scene of this film shows a rather distraught but attractive young woman sitting in what is apparently the office of a District Attorney. We learn that she has recently undergone a frightening experience in associating with a brother and sister team that specializes in providing young women to satisfy the perverted needs of sexual deviates, and has decided to cooperate with the authorities in order to "stop this sort of thing." The District Attorney then asks her to relate her experience and through a series of flashbacks, the audience views, in scene after scene, episodes involving lesbianism, flagellation, sadism, voyeurism and group orgies, as well as the more conventional, if less imaginative, heterosexual activities. The heroine realizes the error of her ways in the final scenes of the movie when she attends an orgy where she is forced to partially disrobe before the assemblage and allow herself to be

marked with a hot branding iron on her thigh. Seeking relief from the pain she manages to crawl into a bathroom where she discovers the mutilated corpse of a woman whom we have seen whipped to death a short time before.

Case No. 40215 involves the movie "Body of a Female." In this film a young man, hereafter referred to as "X", has been attracted to a woman he has seen performing in a strip tease show. Desiring to become better acquainted, he asks a man we shall call "Y" to bring her to X's mansion in the country. Y then proceeds to kidnap the woman from her apartment while she is taking a bath and drives to X's mansion where she is offered a sum of money if she will remain with X for a few days. Although she agrees to this, she is not aware that X is a sadist who derives his sexual pleasure from flagellating and otherwise maiming women. Y, however, learns of X's sadistic traits and returns to the mansion to rescue the young woman. Before Y can arrive on the scene, X manages to disrobe and whip his victim and just as he is about to replace the whip with a knife, Y breaks into the room and flees with the woman. The remainder of the film concerns X's attempts to find both Y and the woman in New York City. The search is interrupted occasionally by scenes in which X is taking photographic shots of different girls in various stages of undress. Another interruption occurs when he flogs a masseuse whom he has partially disrobed by force. When he finally manages to locate the couple, a fight ensues, X is left lying on a beach, and Y and the woman go off presumably to live happily ever after.

The defendants readily admit that the films in question deal with sex and they accuse the board and the trial court of confusing sex with obscenity. We believe the defendants are the ones who are confused. We certainly do not challenge the truth of the defendants' citation from *Roth* that "sex, a great and mysterious motive force in human life, has indisputably been a subject of absorbing

interest to mankind through the ages [and] is one of the vital problems of human interest and public concern," and we presume from the use of this language that the defendants are indirectly claiming that, because their films deal with a "problem of human interest and public concern," they have "that redeeming social importance" which would render them constitutionally protected.

We are not impressed with this argument. Contrary to the defendants' assertion, our examination of these films shows that they deal not merely with sex, but with sexual deviations which can only appeal to those with a shameful and morbid interest in nudity and sex. The suggestive titles alone indicate the nature of the films and indeed the producers have apparently spared no effort to see that the spectator searching for the erotic is not disappointed.

Both films clearly go beyond the customary limits of candor in this country. The use of the District Attorney in "Rent-A-Girl" is a ludicrous attempt to make it appear as though the film is directed to a discussion of a social and legal problem. As such it fails. The film is nothing more than a vehicle for portraying one abnormal sexual episode after another. Although "Body of a Female" makes no such attempt to present an aura of respectability, its flagellation scenes can appeal only to the prurient interest. On the basis of *Roth* and subsequent Supreme Court cases, and having applied the standards established therein, we find both films to be obscene and therefore beyond the protection of either the first amendment to the United States constitution or section 4 of article II of the Illinois constitution.

We now turn to errors in procedure allegedly occurring in the lower court. The defendants first contend that the court erred in failing to require the joinder of necessary parties to these proceedings. Specifically, they contend that the owners of the films, the authors thereof, the holders of the copyrights, the producers, and the regional and national

distributors should have been made parties defendants, since their property interests were affected. As was pointed out in *Interstate Circuit, Inc.* v. *City of Dallas,* 366 F. 2d 590, however, the leading United States Supreme Court decision dealing with censorship ordinances, *Freedman* v. *Maryland,* 380 U.S. 51, 13 L. Ed. 2d 649, did not require that national distributors be joined in censorship proceedings if their interests were represented by others. Our own court has held that persons who are effectively represented need not be made parties. (*Cales* v. *Dressler,* 315 Ill. 142.) Although *Cales* dealt with the question of whether or not the executor could effectively represent the legatees under a will, the basic principle is applicable here. The named defendants, Teitel Film Corporation and Charles Teitel, are the Chicago representatives of the owners of these films. We note that in their correspondence to the motion picture board, made part of the record, the defendants assert that as representatives of the owners they have the authority to amend the films in question. We believe that the interests of the named defendants are similar, if not identical, to that of the owners, authors and other proposed defendants, and that the working relationship between the two is such as to afford adequate protection for all. Consequently, we conclude no error was committed by the trial court in this regard.

Another contention raised by the defendants is that the joinder of the films themselves as parties defendant was error since section 24 of the Civil Practice Act (Ill. Rev. Stat., 1965, chap. 110, par. 24) provides only that "Any *person* may be made a defendant * * *." (Emphasis ours.) We find no need to determine, however, the issue of whether or not a film can be a "person" within the meaning of the Civil Practice Act. In view of the fact that the applicants were properly named and served as parties defendant as is provided for by the Chicago Motion Pic-

ture Ordinance, the fact that the films were also named as parties defendant is immaterial and resulted in no harm to the defendants' cause.

The defendants also urge that the plaintiffs were not the proper parties to bring this suit. They raise several points, principal among them being that the city of Chicago should have brought this action. Section 155—7.2 of the Chicago Motion Picture Ordinance provides: "In the event the Motion Picture Appeal Board affirms the decision of the Superintendent of Police in rejecting a motion picture, the Board, within ten (10) days from the hearing, shall file with the Circuit Court of Cook County an action for an injunction against the showing of the film." We have held that this ordinance provides the procedural safeguards delineated in *Freedman,* and we also hold that the appeal board in its official capacity as authorized by the ordinance is the proper party to initiate these proceedings. Defendants claim, however, that even if the board is authorized to bring this suit, it was error to name the board members individually. This argument, like several others in defendants' brief, is devoid of merit. Each board member is included by name and official capacity as a member of the Motion Picture Appeal Board. We trust that the defendants were not confused by this procedure and hold that it is proper both under section 21 of the Civil Practice Act and the Chicago Motion Picture Ordinance.

A further contention of the defendants is that the trial court erred in denying their motion to strike and dismiss the amended complaints as they "contain no facts whatsoever to support the unlawful and improper issuance of injunctions against the showing of these films in the City of Chicago." Although we have held earlier in this opinion that the question of whether or not the films under consideration are actually obscene is one of law and that, consequently, the plaintiffs' assertions that they are obscene are merely legal conclusions, we do not agree with the defendants'

position that the complaints were comprised in their entirety of conclusions of either law or fact. The subject films themselves were incorporated by reference in the amended complaints. These films, together with the characterizations of their contents and the United States Supreme Court guidelines as set down in the complaints, presented sufficient facts from which the trial court could determine the issue of obscenity and order the requested injunctions. We conclude, therefore, that the trial court did not abuse its discretion in denying defendants' motions to strike and dismiss.

Defendants finally urge that the trial court should have sustained their motions because of the plaintiffs' failure to include in their complaints the transcripts of the proceedings before the board, contending that such inclusion is required by the Administrative Review Act. The injunction proceedings, however, were brought pursuant to the Chicago Motion Picture Ordinance and were not of the type that fall within the rules governing administrative review. Consequently, it was not necessary to include the transcript of the proceedings of the board in the amended complaints.

In conclusion, we find that the provisions of the Chicago Motion Picture Ordinance, as it existed at the time these proceedings took place, were not violative of the Illinois or United States constitutions, the films "Rent-A-Girl" and "Body of a Female" are obscene under the guidelines approved by the United States Supreme Court, and the proper parties, plaintiffs and defendants, have been designated in the amended complaints. For these reasons we conclude that the trial court correctly denied the defendants' motions to strike and dismiss the amended complaints and furthermore, that it correctly found the films in question to be obscene.

Accordingly, we affirm the orders of the trial court enjoining the showing of these films in the city of Chicago.

*Orders affirmed.*