[No. 38815.    En Banc.    September 26, 1968.]

FINE ARTS GUILD, INC., *Respondent,* v. THE CITY OF SEATTLE *et al., Appellants.*

PARAMOUNT FILM DISTRIBUTING CORPORATION *et al., Respondents,* v. THE CITY OF SEATTLE *et al., Appellants,* STERLING THEATRES CO., *Respondent.**

*Reported in 445 P.2d 602.

*A. L. Newbould, Arthur T. Lane,* and *Woodford B. Baldwin,* for appellants.

*Culp, Dwyer & Guterson, William L. Dwyer,* and *Louis F. Nawrot, Jr.,* for respondent Fine Arts Guild, Inc.

*Bogle, Gates, Dobrin, Wakefield & Long, Thomas L. Morrow,* and *Bertram L. Metzger, Jr.,* for respondents Paramount Film Distributing Corporation et al.

HAMILTON, J.—Ordinances Nos. 83099 and 93227[1] of the city of Seattle undertake, through a board of theatre supervisors, to regulate and classify motion pictures and allied forms of entertainment as to their moral content. Respondents in the present actions, consolidated for purposes of trial and appeal, challenge the constitutionality of the respective ordinances upon the grounds that they violated the first[2] and fourteenth[3] amendments to the United States Constitution,

---

[1]See Appendix A.

[2]"Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the government for a redress of grievances." U. S. Const. amend. 1.

[3]"All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U. S. Const. amend. 14, § 1.

and Const. art. 1, §§ 3[4], 5,[5] and 12.[6] The trial court sustained the challenges. The city of Seattle and its coparties appeal. We affirm the judgment of the trial court for the reasons hereinafter stated.

Ordinance No. 83099, as amended, in substance (a) makes it unlawful to knowingly and publicly exhibit an obscene show; (b) establishes a board of theatre supervisors empowered to preview proposed showings; (c) authorizes such board to make recommendations to the prospective exhibitor that (1) the material not be publicly shown, (2) portions of the material be eliminated, or (3) the showing be limited to adults; and (d) directs the board to make written reports to the mayor, the licensing committee of the city council, and to the city council relative to its work and the effectiveness of its recommendations. Exhibitors failing to comply with the ordinance are made subject to fine and imprisonment.

Ordinance No. 93227, in substance, authorizes the board of theatre supervisors to preview and classify motion pictures relative to permissible public viewings as between adults and those in various age brackets under 21 years of age. It then subjects any exhibitor who shows a board classified film to anyone within a proscribed age group, or who shows a classifiable film to minors without first affording the board an opportunity to review it, to criminal penalties and/or to suspension or loss of the exhibitor's theatre license.

The trial court struck down both ordinances as denying procedural safeguards guaranteed by the due process clauses of the federal and state constitutions and as establishing an administrative system of impermissible prior re-

[4]"No person shall be deprived of life, liberty, or property, without due process of law." Const. art. 1, § 3.

[5]"Every person may freely speak, write and publish on all subjects, being responsible for the abuse of that right." Const. art. 1, § 5.

[6]"No law shall be passed granting to any citizen, class of citizens, or corporation other than municipal, privileges or immunities which upon the same terms shall not equally belong to all citizens, or corporations." Const. art. 1, § 12.

straint upon free speech as guaranteed by the first amendment to the United States Constitution and Const. art. 1 § 5. Furthermore, the trial court held ordinance No. 93227 to be unconstitutionally vague and overbroad, as well as discriminatory under the equal protection and privileges and immunities clauses of the respective federal and state constitutions.

Appellants assign error to the trial court's basic findings, conclusions, and judgment. In reviewing and affirming the trial court's determination with respect to the constitutional status of the ordinances in question, we limit ourselves to the prior restraint and procedural aspects of the ordinances in question. In so doing, we do not reach the questions of vagueness, overbroadness, or the various claims of discrimination. In this latter vein, we are satisfied that there are presently sufficient guidelines in the extant decisions of the United States Supreme Court to permit the drafting of appropriate future legislation within the confines of the pertinent boundaries imposed by that court. *See,* for example, *Ginsberg v. State of New York,* 390 U. S. 629, 20 L. Ed. 2d 195, 88 Sup. Ct. 1274 (1968); *Interstate Circuit, Inc. v. Dallas,* 390 U. S. 676, 20 L. Ed. 2d 225, 88 Sup. Ct. 1298 (1968); R. Kuh, Foolish Figleaves (Macmillan 1967).

■ We approach our immediate problem with the initial observation that it is now well settled that motion pictures and plays are a form of expression entitled to the constitutional guarantees of free speech and press under both the federal and state constitutions. *Jacobellis v. Ohio,* 378 U.S. 184, 12 L. Ed. 2d 793, 84 Sup. Ct. 1676 (1964); *Joseph Burstyn, Inc. v. Wilson,* 343 U. S. 495, 96 L. Ed. 1098, 72 Sup. Ct. 777 (1952). And, it is equally well established that any restraint imposed upon a constitutionally protected medium of expression comes into court bearing a heavy presumption *against* its constitutionality. *Freedman v. Maryland,* 380 U. S. 51, 13 L. Ed. 2d 649, 85 Sup. Ct. 734 (1965); *Bantam Books, Inc. v. Sullivan,* 372 U. S. 58, 9 L. Ed. 2d 584, 83 Sup. Ct. 631 (1963); *Adams v. Hinkle,* 51 Wn.2d 763, 322 P.2d 844 (1958).

■ Likewise basic, is the exclusion of the utterance of obscenity from the federal constitutional guarantees of free expression. In depriving obscenity of the First Amendment, *supra*, protection, the United States Supreme Court in *Roth v. United States*, 354 U.S. 476, 1 L. Ed. 2d 1498, 77 Sup. Ct. 1304 (1957), quoted with approval from *Chaplinsky v. New Hampshire*, 315 U.S. 568, 86 L. Ed. 1031, 62 Sup. Ct. 766 (1942):

> ". . . . `It has been well observed that such [lewd and obscene] utterances are no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality. . . ."*

The wisdom of this judgment that obscenity should and can be properly restrained is reflected in the international accord of over 50 nations, in the obscenity laws of all of the 50 states (*see, e.g.*, RCW 9.68), and in the 20 obscenity laws enacted by the United States Congress from 1842 to 1956. *Roth v. United States, supra*, at 485, footnote 17.

■ The issue which arises in the instant case is, however, the regulation, classification, and restraint sought to be imposed upon the media of expression involved prior to the initial public exhibition of that media. In this vein, prior or previous restraint, in a limited sense, has been found to be consistent with the federal constitutional guarantees of freedom of expression. In *Times Film Corp. v. Chicago*, 365 U.S. 43, 5 L. Ed. 2d 403, 81 Sup. Ct. 391 (1961), it was stated at 47:

> It has never been held that liberty of speech is absolute. Nor has it been suggested that all previous restraints on speech are invalid. On the contrary, in *Near v. Minnesota*, 283 U. S. 697, 715-716 (1931), Chief Justice Hughes, in discussing the classic legal statements concerning the immunity of the press from censorship, observed that the principle forbidding previous restraint "is stated too broadly, if every such restraint is deemed to be prohibited. . . . [T]he protection even as to previous restraint is not absolutely unlimited. But the limitation has been recognized only in exceptional cases." . . .

[T]he Chief Justice found . . . that "the primary requirements of decency may be enforced against obscene publications" . . . .

This (*Near v. Minnesota ex rel. Olson,* 283 U.S. 697, 75 L. Ed. 1357, 51 Sup. Ct. 625 (1931)) principle of constitutional interpretation and application of the pertinent First Amendment, *supra,* freedom was adhered to in *Kingsley Books, Inc. v. Brown,* 354 U.S. 436, 1 L. Ed. 2d 1469, 77 Sup. Ct. 1325 (1957); applied in the context of motion picture exhibitions in *Joseph Burstyn, Inc. v. Wilson, supra;* and reaffirmed in *Times Film Corp. v. Chicago, supra; Freedman v. Maryland, supra;* and *Interstate Circuit, Inc. v. Dallas, supra.*

Against this background, then, the question posed is not whether a prior restraint may be imposed upon the utterance of obscenity, but rather whether such restraint may be imposed in a particular manner, such as establishing a board to preview, classify and regulate material proposed for exhibition. *See* T. Emerson, The Doctrine of Prior Restraint, 20 Law & Contemp. Prob. 648 (1955), as quoted in *Adams v. Hinkle, supra,* at 772.

In *Times Film Corp. v. Chicago, supra,* the United States Supreme Court had before it for consideration a municipal ordinance which required, as a prerequisite of public exhibition, the delivery of motion picture films to the office of a censor for examination. The court held that the ordinance did not, upon its face, violate the federal constitutional guarantees of freedom of expression. In *Bantam Books, Inc. v. Sullivan, supra,* and *Freedman v. Maryland, supra,* however, it was pointed out that the only question tendered for decision in the *Times Film Corp.* case was whether a prior restraint was necessarily unconstitutional under all circumstances. The specific procedural aspects of the Chicago ordinance were not then in issue.

In the *Bantam Books, Inc.,* and the *Freedman* cases, *supra,* attention was focused upon the procedural aspects of the censorship systems there involved. The *Times Film Corp.* case was explained and restricted to the issue de-

cided. In the *Bantam Books, Inc.,* case the court commented at 70:

We have tolerated such a system only where it operated under judicial superintendence and assured an almost immediate judicial determination of the validity of the restraint. (Footnote omitted.)

The court then stated in the *Freedman* case, at 58:

Applying the settled rule of our cases, we hold that a noncriminal process which requires the prior submission of a film to a censor avoids constitutional infirmity only if it takes place under procedural safeguards designed to obviate the dangers of a censorship system. First, the burden of proving that the film is unprotected expression must rest on the censor. . . . Second, while the State may require advance submission of all films, in order to proceed effectively to bar all showings of unprotected films, the requirement cannot be administered in a manner which would lend an effect of finality to the censor's determination whether a film constitutes protected expression. The teaching of our cases is that, because only a judicial determination in an adversary proceeding ensures the necessary sensitivity to freedom of expression, only a procedure requiring a judicial determination suffices to impose a valid final restraint. . . . To this end, the exhibitor must be assured, by statute or authoritative judicial construction, that the censor will, within a specified brief period, either issue a license or go to court to restrain showing the film. Any restraint imposed in advance of a final judicial determination on the merits must similarly be limited to preservation of the status quo for the shortest fixed period compatible with sound judicial resolution. . . . [T]he procedure must also assure a prompt final judicial decision, to minimize the deterrent effect of an interim and possibly erroneous denial of a license.

*See also Teitel Film Corp. v. Cusack,* 390 U.S. 139, 19 L. Ed. 2d 966, 88 Sup. Ct. 754 (1968).

It is apparent that neither ordinance No. 83099 nor No. 93227 meet the procedural requirements announced in the *Freedman* case.

■ Both ordinances, when examined in the light of the *Freedman* criteria, must be viewed in the context of the

city's licensing power, for the ordinances provide that the city council not only issue theatre licenses, but also that it may revoke, suspend or refuse to renew them—one ground for revocation or suspension being the violation of any law or ordinance relating to public morality or decency. Seattle Code 10.02.130.

Ordinance No. 83099, by its terms, inferentially if not directly, wields this licensing power as a censorship weapon. Section 3 empowers the board of theatre supervisors to demand advance showings of proposed exhibitions and to make restrictive recommendations to exhibitors. The same section also requires the board to "make written report from time to time to the Mayor and City Council concerning the effectiveness of its recommendations in such connection." Section 2 requires the board to "file with the Mayor each month, and with the License Committee of the City Council annually, written reports of its investigations and work under this ordinance." The ordinance thus makes plain the intended connection between an exhibitor's cooperation with the board and the maintenance of his theatre license. And, as the evidence reveals and the trial court found, the board in fact utilized the threat of suspension, revocation or nonrenewal of theatre licenses as a means of seeking to enforce certain of its recommendations. The ordinance thereby effectively superimposes a system of administrative regulation upon the criminal sanctions otherwise provided for by the ordinance. In thus obviating or sidestepping the need to employ the criminal sanctions, the ordinance eliminates the safeguards of the criminal process. It then runs afoul of the procedural requirements of the *Freedman* case in that (1) the implicit threat of license revocation lends an effect of finality to the board's recommendations even though they are not the product of a judicial determination as to whether the proposed exhibition constitutes constitutionally protected expression; (2) the board is not required to hold a hearing nor even to give notice to the exhibitor, beyond the initial demand that the proposed exhibit be submitted for preview; (3) the ordi-

nance does not place upon the board the burden of proving that the proposed exhibit is constitutionally unprotected; and (4) there is no assurance of a "prompt final judicial decision," for the only system of review provided by the ordinance is purely administrative.

Likewise, ordinance No. 93227 fails to provide for certain of the procedural requirements of a constitutional system of prior restraint. The *Freedman* case, *supra*, requires that an exhibitor be assured by the ordinance or authoritative judicial construction, that the board of theatre supervisors will, within a specified brief period, either approve a film or play, or go to court to enforce restrictive classifications. Any restraint imposed in advance of a final judicial determination on the merits must similarly be limited to preservation of the status quo for the shortest fixed period of time compatible with sound judicial resolution. Therefore, the ordinance must also project a prompt final judicial decision to minimize the deterrent effect of an interim and possibly erroneous classification.

Ordinance No. 93227 fails in that no time period is specified during which the board must make its ruling, and, although appeals must be heard by the city council within a given time of a notice of appeal, no time period is specified for the council's decision other than a "reasonable time." Furthermore, no time periods are specified in connection with any final judicial review, nor is any mode of initiating effective judicial review suggested.

These procedural defects in both ordinances are not severable from the remainder of the respective ordinances, and, accordingly, both ordinances must be declared in violation of the pertinent guarantees of the federal constitution.

Respondents contend that the ordinances not only violate the first and fourteenth amendments to the United States Constitution, but also Const. art. 1, § 5, which provides:

Every person may freely speak, write and publish on all subjects, being responsible for the abuse of that right.

512

In this respect, it is respondents' contention that the language of Const. art. 1, § 5, clearly and plainly prohibits *any* prior restraints upon the right of speech, including obscene utterances, and permits only post publication imposition of punishment. In support of their contention, respondents point to decisions from other states having similar constitutional provisions, which decisions generally sustain respondents' position.[7]

We have, however, in varying contexts, applied the provisions of Const. art. 1, § 5, and the first amendment to the United States Constitution in pari materia and inferentially interchangeable.[8] And, in so doing, we commented in *Shively v. Garage Employees Local 44*, 6 Wn.2d 560, 567, 108 P.2d 354 (1940), that "We are of the opinion the right of freedom of speech is not absolute."

So far as our research of the opinions of this court be concerned we have never specifically held to the contrary. And, we do not read our decision in *Adams v. Hinkle*, 51 Wn.2d 763, 322 P.2d 844 (1958), as holding that prior restraint is prohibited by Const. art. 1, § 5, under any and all circumstances.

The argument advanced in support of respondents' view is that the language of Const. art. 1, § 5, is terse, vigorous and so plain as to negate the need for construction, and since the right to speak, write and publish cannot be abused until it is exercised there can be no prior restraint.

---

[7]*Phoenix Newspapers, Inc. v. Superior Court*, 101 Ariz. 257, 418 P.2d 594 (1966); *Dailey v. Superior Court*, 112 Cal. 94, 44 Pac. 458 (1896); *K. Gordon Murray Prod., Inc. v. Floyd*, 217 Ga. 784, 125 S.E.2d 207 (1962); *William Goldman Theatres, Inc. v. Dana*, 405 Pa. 83, 173 A.2d 59 (1961).

[8]*Shively v. Garage Employees Local 44*, 6 Wn.2d 560, 108 P.2d 354 (1940); *Swenson v. Seattle Central Labor Council*, 27 Wn.2d 193, 177 P.2d 873, 170 A.L.R. 1082 (1947); *Gazzam v. Building Serv. Employees Int'l, Local 262*, 29 Wn.2d 488, 188 P.2d 97, 11 A.L.R.2d 1330 (1947); *Pacific Navigation & Trading, Inc. v. National Organization of Masters, Mates & Pilots of America, West Coast Local 90*, 33 Wn.2d 675, 207 P.2d 221 (1949); *Audubon Homes, Inc. v. Spokane Bldg. & Constr. Trades Council*, 49 Wn.2d 145, 298 P.2d 1112 (1956); *Adams v. Hinkle*, 51 Wn.2d 763, 322 P.2d 844 (1958).

The federal guarantee of free expression is also "terse and vigorous," and apparently plain of meaning. This, however, did not preclude judicial interpretation to the effect that prior restraints were not absolutely prohibited, particularly in the area of obscenity which, by its nature, forms no essential part of any exposition of ideas, and is of such insignificant social value that any benefit to be derived is clearly outweighed by the social interest in order and morality. *Chaplinsky v. New Hampshire,* 315 U.S. 568, 86 L. Ed. 1031, 62 Sup. Ct. 766 (1942); *Roth v. United States,* 354 U.S. 476, 1 L. Ed. 2d 1498, 77 Sup. Ct. 1304 (1957).

Our view in this respect would appear to be in accord with the courts of Illinois, Maryland, and New York, all of which have constitutional guarantees not unlike our own. *See Cusack v. Teitel Film Corp.,* 38 Ill. 2d 53, 230 N.E.2d 241 (1967); *Freedman v. State,* 233 Md. 498, 197 A.2d 232 (1964); *Rockwell v. Morris,* 10 N.Y.2d 721, 219 N.Y.S.2d 268, 176 N.E.2d 836, *aff'g* 12 App. Div. 2d 272, 211 N.Y.S.2d 25 (1961).

For the reasons and upon the grounds stated, the judgment of the trial court is affirmed.

FINLEY, C. J., HILL, WEAVER, ROSELLINI, HALE, and NEILL, JJ., concur.

#### APPENDIX A.

ORDINANCE No. 83099 (Including the amendment of Section 1 by Ordinance No. 91385)

AN ORDINANCE relating to, and regulating the exhibition or display of certain moving or motion pictures, operas, dramas, plays, stage or platform performances, exhibitions, and entertainments in places of amusement in theatres and other places open to the public; creating a Board of Theatre Supervisors and defining the duties and powers thereof; defining offenses and prescribing penalties; and repealing Ordinance No. 59764 as amended by Ordinances Nos. 61235, 64762 and 77284.

BE IT ORDAINED BY THE CITY OF SEATTLE AS FOLLOWS:

Section 1. It is unlawful for anyone having knowledge of the contents thereof, to cause to be performed or exhibited or to engage in the performance or exhibition, in any place open to the public, of any show, act, play, dance or motion picture which is obscene.

Section 2. The Mayor of the City of Seattle is hereby authorized and directed to appoint, subject to confirmation by the City Council, a

Board of Theatre Supervisors, consisting of nine (9) members to serve for terms of three (3) years each, and each of whom shall be at the time of appointment a resident and elector of the City of Seattle; Provided that the first appointments hereunder shall be three members for one year, three for two years and three for three years. Any member may be removed by the Mayor with the concurrence of the City Council. Each member shall be furnished by the City with an appropriate badge which, upon exhibition, shall entitle such member to free admission to any place of amusement, theatre or other place open to the public for the purpose of making any investigation deemed necessary to aid in the enforcement of this ordinance. It shall be the duty of said Board and each member thereof to aid and assist in such enforcement, and for that purpose the said Board shall be empowered to investigate any theatre or other place of amusement or entertainment open to the public where performances may be presented and any advertisement thereof. Said Board or any member thereof may file, or cause the filing of a formal complaint charging the violation of any of the provisions of this ordinance, particularly Section 1 hereof. Said Board shall file with the Mayor each month, and with the License Committee of the City Council annually, written reports of its investigations and work under this ordinance. Said Board is hereby empowered to investigate advertising copy pertinent to the regulations contained in Section 1 of this ordinance, and it shall be unlawful to refuse to submit such copy upon demand therefor by the Board.

Section 3. Anyone distributing, supplying or furnishing for display in any place open to the public in the City of Seattle, any film or moving or motion picture, shall upon demand by said Board of Theatre Supervisors, display to said Board any such picture in advance and no such picture shall be shown or displayed in any place open to the public until after such examination, which shall be as to conformance with Section 1 of this ordinance. Following such examination said Board, if it finds that such picture offends against said Section 1 in whole or in part, may recommend: (a) That such picture be not shown at all in any place open to the public. (b) That certain eliminations be made. (c) That such showing be restricted to adults only. Said Board shall make written report from time to time to the Mayor and City Council concerning the effectiveness of its recommendations in such connection.

Section 4. It shall be unlawful to refuse admission to any member of said Board, properly identified as such, to any performance in any theatre or place of amusement open to the public, or to refuse to furnish said member with a proper seat.

Section 5. Anyone conducting or maintaining any theatre, or place of entertainment or exhibition at which moving pictures are displayed or to be exhibited shall, during the hours when the same is open to the public, install and maintain light, sufficient in quantity, so that the features of any person in such place may be distinguished from a distance of at least ten (10) feet.

Section 6. That Ordinance No. 59764, entitled:

"AN ORDINANCE relating to, and regulating, the exhibition or display of moving or motion pictures, drama and opera performances, public dances, exhibitions, entertainment, places of amusement, theatres and penny arcades; creating a Board of Theatre Supervisors; defining the duties and powers thereof; defining offenses, prescribing penalties; and repealing Ordinances Nos. 28467, 34790, 42118, 44942, and 52969."

as amended by Ordinances Nos. 61235, 64762 and 77284, be and the same is hereby repealed.

Section 7. Anyone violating or failing to comply with the regulations contained in this ordinance, shall upon conviction thereof be fined in a sum not exceeding $300, or confined in the city jail for a term not exceeding ninety (90) days; or may be both so fined and imprisoned.

Section 8. This ordinance shall take effect and be in force thirty days from and after its passage and approval, if approved by the Mayor; otherwise it shall take effect at the time it shall become a law under the provisions of the city charter.

ORDINANCE 93227

AN ORDINANCE defining, providing for the classification of and regulating the exhibition of "adults only" and "18 years and older only" motion pictures, defining offenses and prescribing penalties therefor and repealing Ordinance 91830.

BE IT ORDAINED BY THE CITY OF SEATTLE AS FOLLOWS:

Section 1. It is unlawful to knowingly show or exhibit to anyone under 21 years of age not accompanied by parent, guardian or spouse any motion picture, the dominant theme of which taken as a whole appeals to the prurient interest of the average person of the age of 18 to 20 years inclusive, applying contemporary community standards and which motion picture has been so determined by the Board of Theatre Supervisors established by Ordinance 83099, or by the City Council on appeal. All such motion pictures shall be classified by said Theatre Board and designated in all advertising and posting thereof as "Adults only."

Section 2. It is unlawful to knowingly show or exhibit to anyone under 18 years of age not accompanied by parent or guardian any motion picture which portrays illicit sex or sexual immorality or which as to the average minor under 18 years of age is obscene, lewd, lascivious, or indecent, or which includes portrayals of nude or partially denuded figures presented in a manner to provoke or arouse lust or passion in such a minor or to exploit sex, lust or perversion, and has been so determined by the Board of Theatre Supervisors, or the City Council on appeal. All such motion pictures shall be classified by said Theatre Board and designated in all advertising and posting thereof as "18 years and older only."

Section 3. It shall be unlawful to show or exhibit any motion picture to anyone under the age of 21 until the Board of Theatre Supervisors shall have been afforded a reasonable opportunity to review the same,

after which review said Board is hereby authorized to classify such motion picture as contemplated in Sections 1 and 2 of this ordinance; provided any exhibitor may appeal the classification and determination of said Board to, and by written notice filed with the City Council. The City Council, by its License Committee, shall hear such appeal within 30 days of the filing of notice thereof and decide the same by resolution within a reasonable time thereafter, and said Board's classification shall remain in effect pending final determination of such appeal.

Section 4. In addition to the penalties hereinafter provided, failure to afford the Board of Theatre Supervisors a reasonable opportunity to review, designate and classify any motion picture, or failure to comply with any lawful classification by said Board or by the City Council on appeal, or failure to comply with any lawful order of said Board with respect to advertising and posting requirements or conviction for violation of any provision of this ordinance shall, upon notice and hearing, be cause for revocation or suspension of the license by the City Council for the theatre at which the film in question has been exhibited.

Section 5. Anyone violating or failing to comply with provisions of this ordinance shall upon conviction thereof be fined in a sum not exceeding $500.00 or confined to the city jail for a term not exceeding 180 days or both so fined and imprisoned.

Section 6. That Ordinance 91830 entitled:

"An Ordinance requiring the classification and designation of certain motion pictures as 'adults only' and authorizing suspension or revocation of theatre licenses for the wilful showing thereof to certain minors unaccompanied by a parent or guardian."

be and the same is hereby repealed.

Section 7. This ordinance shall take effect and be in force thirty days from and after its passage and approval, if approved by the Mayor; otherwise it shall take effect at the time it shall become a law under the provisions of the city charter.

Hunter, J. (dissenting)—The majority, in my opinion, has reached out without justification to strike down two ordinances which I am satisfied are compatible with constitutional standards. I dissent both because I think that the result reached by the majority is not required by the facts of the case, and because I am concerned that this decision will tend to discourage our municipalities from performing their clear duty to safeguard the moral welfare of the young.

I take as my point of departure that which the constitution permits. It permits the state to prohibit the publication of obscenity in whatever form obscenity may take. *Roth v. United States*, 354 U.S. 476, 1 L. Ed. 2d 1498, 77 Sup. Ct.

1304 (1957). I am further convinced that it permits the state to take necessary and reasonable measures to insure that young people are protected from corrupting influences, such as films that exploit illicit sex, senseless violence, and other themes fundamentally contrary to the accepted moral values of our nation.

The United States Supreme Court recently decided a case which supports the view that the First Amendment does not require society to expose its youth to degenerate forms of "expression" even though such forms might be constitutionally protected so far as adults are concerned. See *Ginsburg v. New York*, 390 U.S. 629, 20 L. Ed. 2d 195, 88 Sup. Ct. 1274 (1968); *Jacobellis v. Ohio*, 378 U.S. 184, 12 L. Ed. 2d 793, 84 Sup. Ct. 1676 (1964). The majority decides this case without reference to the state's overriding interest in regulating expression for the purpose of protecting youth from the dissemination of objectionable films.

The majority evidently concludes, first, that ordinances No. 83099 and No. 93227 are unconstitutional on their face, and second, that they are unconstitutional as applied, since in both respects they fall short of the constitutional standards against which prior restraints on the exhibition of films are measured.

Neither of these conclusions in my opinion is justified. The ordinances do not, on their face, impose prior restraints on the exhibition of films. Ordinance No. 83099 contains nothing which interferes with an exhibitor showing any film he pleases, except the requirement that a preview, if requested, be given to the board of theatre supervisors. The greatest extent of the board's power, under the ordinance, is to issue a recommendation that a given film not be shown. There is no penalty attached to ignoring such a recommendation.

Ordinance No. 93227 does not empower the board to prevent the exhibition of any film to adults, and it provides no penalty under any circumstances when a film is shown only to adults. The net effect of its provisions is that the exhibitor, *if and only if he wishes to admit persons under 21 to*

*his theater,* must afford the board "a reasonable opportunity to review" the film. If the board classifies the film as "adults only," or "18 years and older only," the ordinance authorizes an appeal from the board's classification to the city council licensing committee, which must hear the appeal within 30 days. Even though a film earns an unfavorable classification and even though the exhibitor is appealing that classification, the film may be shown to adults without any penalty being incurred. In fact, the only restraint involved in the ordinance is that (1) the exhibitor may not, without committing an offense, exhibit a film to persons under 21 without first having given the board an opportunity to classify it, and (2) after a proper and valid classification is made and upheld on appeal, if taken, the terms of the classification may not be violated. This restraint is not only merely a partial restraint, it is also one which is justifiable and necessary. *Cf. Ginsburg v. New York, supra.* There is no fatal curtailment of freedom of expression involved in this reasonable means, chosen by the city of Seattle to vindicate a serious and compelling public interest: protecting juveniles from debased "entertainment," which undermines their moral values. The First Amendment is not a shield for commercial pandering to our young people.

The majority's determination that the ordinances, in operation, amount to a scheme of censorship, is a non sequitur. Granting that it is a fact that the board has used the threat of such consequences to coerce exhibitors into refraining from exhibiting certain films, this is no fault of the ordinances and no ground on which to attack their constitutionality. If the board engages in such a practice, the appropriate remedy is a legal challenge to the practice and not an assault on ordinances which do not themselves authorize the practice.

I conclude that the majority has misconstrued the ordinances before it as a scheme of censorship, and has not adequately weighed the compelling public interest underlying the ordinances. Censorship is indeed incompatible with

our constitution and our traditions of free government, but reasonable steps to safeguard the morals and sensibilities of the young, such as the ordinances involved in this case, are not censorship. The Seattle ordinances are not, in my view, constitutionally invalid as a scheme of prior restraint, and the judgment of the trial court should be reversed.

